894 So.2d 1222 (2005)
Armondo MARTINEZ
v.
MARLOW TRADING, S.A. and Foreign Crew Employment Services, Inc.
No. 2004-CA-0538.
Court of Appeal of Louisiana, Fourth Circuit.
February 2, 2005.
*1224 Jeremiah A. Sprague, Timothy J. Falcon, Falcon Law Firm, Marrero, LA, for Plaintiff/Appellant.
E. Carroll Rogers, Emily Stevens Hardin, Peter B. Sloss, Murphy, Rogers & Sloss, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME).
TERRI F. LOVE, Judge.
This appeal arises from the trial court's granting of defendant, Marlow Trading S.A.'s ("Marlow Trading"), motion to dismiss based upon forum non conveniens. The trial court determined that Orleans Parish was an inconvenient forum for the proceedings and Panama or Honduras would better serve the parties involved. The appeal further arises from the trial courts grant of the partial exception of No Cause of Action and dismissal with prejudice of defendant, Foreign Crew Employment Services, L.L.C. ("FCES"). The court determined that FCES was an agent of Marlow Trading and as an agent was not liable for maintenance and cure damages.

FACTS AND PROCEDURAL HISTORY
Mr. Armondo Martinez ("Mr.Martinez"), a Honduran national, was injured in the course and scope of his employment while working aboard M/V PERLA, a vessel in navigation, owned and operated by Marlow Trading. Mr. Martinez was injured while attempting to carry a 65lb evaporator sea pump to another deck, as per the instruction of the vessel's third engineer, Mr. Galazoulas Dimosthenis. While attempting to transport the pump, Mr. Martinez, began to feel a sharp pain radiating down his spine and ending in his leg. The injury occurred while the ship was docked in Coatzacoalcos, Mexico.
Once Mr. Martinez's reported the accident and injury, he was permitted to leave the vessel and obtain medical treatment in Coatzacoalcos, Mexico. Dr. Jose Cruz Santes, a Mexican neurosurgeon, saw Mr. Martinez. Dr. Santes diagnosed Mr. Martinez with a herniated L5-S1 disc with compression of the dural sac. Following his diagnosis, Mr. Martinez re-boarded the vessel and worked at light duty status for the duration of the voyage. From Coatzacoalcos, Mexico, the vessel departed to Panama where Mr. Martinez was discharged and repatriated to Honduras.
At the time of the injury, Mr. Martinez was a resident of Honduras. Upon his return to Honduras, Mr. Martinez received a second opinion from a Honduran neurosurgeon, Dr. Rigoberto Diaz Estrada, M.D. The diagnosis of Dr. Santes was confirmed by Dr. Estrada, who also recommended an EMG/NCV test and surgery. All subsequent treatments of Mr. Martinez were performed in Honduras by Honduran Doctors.
While in Honduras, Mr. Martinez contacted Mr. Alan Tinoco, owner of FCES, in order to secure medical care from Marlow Trading. Marlow Trading, existing under the laws of the Nation of Greece, obtained their Honduran Seamen from FCES, a crew agency operating out of New Orleans, Louisiana. Mr. Martinez obtained employment with Marlow Trading through this New Orleans based agency. Mr. Tinoco forwarded this request for medical care to Marlow Trading in Piraeus, Greece, but received no response.
Mr. Martinez filed suit in Civil District Court in Orleans Parish against Marlow *1225 Trading alleging that Marlow Trading was negligent under the Jones Act. He further alleged that Marlow Trading was un-seaworthy pursuant to Maritime law and was liable for maintenance and cure damages. Mr. Martinez also sued FCES as an agent of Marlow Trading for maintenance and cure. Upon filing the suit Mr. Martinez was unable to obtain service through the Greek government. Following this failed attempt at service, Marlow Trading agreed, in writing, to meet Mr. Martinez's claim in order to avoid seizure of the vessel upon its arrival to port in New Orleans. In their Letter of Undertaking, Marlow Trading acknowledged service upon the master in Orleans Parish, but reserved all their rights, exceptions and defenses, in particular the defense of forum non conveniens.
Marlow Trading and FCES filed a Motion to Dismiss in the trial court pursuant to LSA-C.C.P. Art. 123(B), stating that Orleans Parish was not an appropriate forum and that Panama or Honduras would be more appropriate. FCES, separately, filed an exception of no cause of action based upon their assertion that under general maritime law a seaman only has a claim for maintenance and cure against his direct employer, and based upon Mr. Martinez's own assertion, FCES was merely an agent for Marlow Trading.
The trial court granted defendants' Motion to Dismiss based upon the Doctrine of Forum Non Conveniens and conditioned the dismissal, "... as set forth in the Louisiana Code of Civil Procedure Article 123(C), on the plaintiff being allowed to move for reinstatement of this same cause of action in this same forum in the event that suit on the same cause of action or on any cause of action arising out of the same transaction or occurrence is commenced in an appropriate foreign forum within sixty (60) days after the rendition of this Judgment of Dismissal and such foreign forum is unable to assume jurisdiction over the parties or does not recognize such cause of action or any cause of action arising out of the same transaction or occurrence." The trial court also granted FCES' Partial Exception of No Cause of Action and dismissed FCES with prejudice. Mr. Martinez filed a timely appeal.

FORUM NON CONVENIENS
A district court's dismissal for forum non conveniens is reviewed by a court of appeal for an abuse of discretion. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). Appellate courts "review the lower court's decision making process and conclusion and determine if it is reasonable...." In re Air Crash Disaster Near New Orleans, Louisiana, 821 F.2d 1147, 1167 (5th Cir.1987). The standard of review in this case is whether the trial court abused its discretion in dismissing the case based upon the forum non conveniens motion. The abuse of discretion standard is appropriate because La. C.C.P. art 123 allots a great amount of discretion to the trial court in determining if the conditions for forum non conveniens are fulfilled; and subsequently we review whether or not this discretion was abused. A.O. Smith v. American Alternative Ins. Co., 778 So.2d 615 (La.App. 4th Cir.2000).
In Mr. Martinez's first assignment of error he avers that the trial court abused its discretion by granting Marlow Trading's motion to dismiss based upon forum non conveniens. The doctrine of forum non conveniens, as stated in LSA-C.C.P. Art 123, promulgates "... for the convenience of the parties and the witnesses, in the interest of justice, a district court upon contradictory motion, or upon the court's own motion after contradictory hearing, may transfer a civil case to another district court where it might have *1226 been brought ....taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interest of justice ..." LSA-C.C.P. Art. 123(A), (B).
"The doctrine of forum non conveniens presupposes at least two forums where the defendant is amendable to process and simply furnishes criteria for choice between them." Dickson Marine, 179 F.3d at 341. Thus a defendant, at the trial level, seeking dismissal on the basis of forum non conveniens must first establish that there is an alternate forum that is both available and adequate. Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 221 (5th Cir.2000).

Adequate/Alternative Forum
In the case sub judice, the trial court determined that Orleans Parish was an inconvenient forum and the proper forum would be a foreign jurisdiction, namely Panama or Honduras. A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. Id. Panama and Honduras are both adequate and available forums for the proceedings to be conducted and; therefore they fulfill the requirements for transfer to a more convenient forum. Panama is available because it is the chosen forum of both parties based upon the contractual agreement, and the vessel is also registered in Panama and flies the flag of that country. Honduras is available because Mr. Martinez is domiciled there and it is where key witnesses are located.
A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly. However, this requirement does not mandate that the parties must enjoy the same benefits as they might receive in an American court. Id. Based upon the affidavits of Panamanian attorney Eduardo Real, we find that Martinez's claims would be recognized in Panama and he would receive adequate remedy. The United States courts have specifically held that the court systems in both Panama and Honduras are legally adequate for resolving matters of this nature. In re Complaint of Fantome S.A., 232 F.Supp.2d 1298 (S.D.Fla.2002); DeMateos v. Texaco Panama, Inc., 562 F.2d 895 (3d Cir.1977). Both Honduras and Panama will supply the parties with a remedy and adequate adjudication on the issues; therefore both countries provide adequate forums for the trial to be conducted.
If the court concludes that an alternative forum exists, it then considers all of the relevant private interest factors, balancing those factors weighing in favor of dismissal with the deference given to plaintiff's choice of forum. In re: Air Crash, 821 F.2d 1147 (5th Cir.1987).

Private Interest Factors
To determine what is most convenient for the parties, the court considers the following private interest factors:
1. Convenience of the parties and witnesses;
2. Access to the sources of proof, as well as viewing of the premises if appropriate;
3. The cost of obtaining attendance of witnesses; and
4. Advantages and obstacles to a fair trial.
Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).
Mr. Martinez is domiciled and has received the remainder of his medical treatment in Honduras; therefore Honduras is also the location of his treating physicians who would be required to testify at trial. *1227 The previous treating physicians are domiciled in Mexico and would be deposed in either forum where the trial is conducted. Marlow Trading asserts, "... keeping this case in Louisiana would be contrary to the Supreme Court's mandate that the trial of a case should proceed in the forum where it will prove `easy, expeditious and inexpensive.'" Reyno, 454 U.S. at 241, 102 S.Ct. 252. In accordance with the Supreme Courts pronouncement we find that in the interest of fostering greater access to sources of proof and minimizing the costs of obtaining witnesses the trial should be held in either Panama or Honduras; especially because the witnesses are not located in Orleans Parish and the vessel is not registered in the parish either.
After considering the private interest factors, the Court then considers the public interest factors to determine whether retention of jurisdiction would be unnecessarily burdensome to the defendant or the Court. If the Court finds that retention of jurisdiction would be unnecessarily burdensome, then dismissal is proper. Reyno, 454 U.S. at 257, 102 S.Ct. 252.

Public Interest Factors
The public interest factors bearing on the question of forum non conveniens included,
1. The administrative difficulties flowing from court congestions;
2. The local interest in having localized controversies decided at home;
3. The interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;
4. The avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law;
5. The unfairness of burdening citizens in an unrelated forum with jury duty.
Id.
The public interest concerns regarding court congestion and localized controversies at home support the dismissal of the case in order to conduct the trial in a foreign forum. Court congestion is not only a concern for Panama and Honduras. This case involves foreign parties that would more expeditiously be served in another forum were the case would not be clogged with the need to accommodate the foreign nature of the issue and proceedings. The City of New Orleans has no interest in the case being adjudicated in the parish. Neither the injury or the treatment occurred in Orleans Parish; therefore the controversy is not local to New Orleans. Consequently, holding the trial proceedings in another forum outside of Orleans parish would not go against the city's interest in having a "localized controversy decided at home."
If the trial were to be conducted in Louisiana, the Orleans Parish court would have to apply foreign law. In the interest of judicial efficiency, it is more efficient for a foreign country to apply its own laws. Otherwise Orleans Parish courts would have to attempt to decipher the foreign law and apply it accordingly. Especially in this case, where the parties have connections to the foreign country and the case can validly be brought in their courts. Dismissal of the suit based upon forum non conveniens is appropriate in order to conduct the trial in a forum where the proper law is accurately applied and in order to avoid conflicts of law issues between the forum law and Orleans Parish law.
Further, this court finds that Panama or Honduras have a greater connection to the trial and therefore it would be an unfair *1228 burden to place upon the citizens of Orleans Parish to have to serve on a jury. To the contrary the citizens of either Honduras or Panama have a great public interest in the outcome of this case because of the personal or business ties that each party carries to each country.
After careful review of the record we find that the defendant has established that there is an alternate forum that is both available and adequate; that all relevant private interest factors and public interest factors were considered and that defendant has satisfied its burden of proof in seeking dismissal on the basis of forum non conveniens. We therefore find that the trial court did not abuse its discretion.

NO CAUSE OF ACTION
In reviewing a trial courts granting of an exception of no cause of action this court must subject the case to de novo review as the exception raises questions of law and the trial courts decision is based only on the sufficiency of the petition. City of New Orleans v. Board of Commissioners of the Orleans Levee District, 93-0690 (La.7/5/94), 640 So.2d 237. The purpose of an exception of no cause of action is to allow the court to determine the legal adequacy of the plaintiff's petition. Darville v. Texaco, Inc. 447 So.2d 473 (La.1984). The exception is designed to test the petition by determining whether plaintiff is afforded a remedy in law based on the facts alleged in the pleading. Sterling v. Shirley, 02-0915, p. 3 (La.App. 3 Cir 12/11/02), 832 So.2d 1179, 1181-82. Therefore a de novo standard of review will be applied in the case sub judice.
FCES' main purpose is to act as an agent for either a foreign agency or a foreign company. The company assists employers in finding crew for various vessels that are foreign owned. Mr. Alan Tinoco, FCES president, states "... their main function is to offer information for air transport, the name of the ship, give notice to the agents of hire and inform the owners of the vessels the movement of the crew." Based upon an evaluation of these functions FCES' role is one of an agent for the agency or the vessel owner. Mr. Martinez's admission in his pleadings show that he was aware that FCES was simply an agent for the vessel owner and was not a party to his employment agreement with Marlow Trading. The knowledge of Mr. Martinez regarding the role of FCES in relation to his employment leads this court to find that FCES was a disclosed agent in the initial transaction.
After Mr. Martinez returned to Honduras he contacted FCES in order to secure payment for medical care from Marlow Trading. Mr. Tinoco testified that he received a letter and subsequently had a conversation with Mr. Martinez regarding the medical care that he needed as a result of his accident aboard the MV/PERLA. Mr. Tinoco further stated that he contacted Marlow Trading and notified them that Mr. Martinez needed to see a doctor for treatment in order to be able to return to work. Mr. Tinoco's request for medical care to Marlow Trading for Mr. Martinez was granted and care was provided. In evaluating this interaction we find that it would have led a reasonable person to believe that FCES was acting as an agent of Marlow Trading, because of the manner in which he was able to place his request for medical care with FCES and receive the care from Marlow Trading. The relationship presented to Mr. Martinez would have reasonably furthered his belief that FCES was an agent acting on behalf of Marlow Trading.
This court finds that based upon the facts presented and Mr. Martinez's pleadings; FCES was a disclosed *1229 agent of Marlow Trading. FCES as Marlow's agent is not liable to Mr. Martinez for maintenance and cure. An injured seaman's right to maintenance and cure arises out of the employment contract between the crewman and his employer. Baker v. Raymond International, Inc., 656 F.2d 173 (5th Cir.1981). It is axiomatic that an employer-employee relationship is essential before liability may be imposed under the Jones Act or general maritime law. Case law firmly dictates, "an agent of the vessel owner ... does not become the employer of the seaman under the Jones Act or the general maritime law." Cosmopolitan Shipping Co., Inc. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949). Therefore, liability for maintenance and cure cannot be extended to the agent because this right only derives from the employment contract. As stated in Abogado, "an agent of the vessel owner cannot be held liable for maintenance and cure." Abogado v. International Marine Carriers, 890 F.Supp. 626 (S.D.Tex.1995).[1]

Conclusion
For the foregoing reasons, the judgment of the trial court is upheld.
AFFIRMED
NOTES
[1] Although not pertinent in the case sub judice, "even though Abogado went on to hold that an agent could be liable for punitive damages for denial of maintenance and cure, punitive damages are no longer available for failure to pay maintenance and cure; consequently the agent is completely relieved of liability." Bridgett v. Odeco, Inc., 93-1536 (La. 4 Cir. 12/15/94), 646 So.2d 1249, 1254.