962 So.2d 5 (2007)
Shelton J. RAYFORD, et al.
v.
NATIONAL RAILROAD PASSENGER CORPORATION, et al.
No. 2005-C-1273.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 2007.
William J. Billeaud, Benjamin B. Saunders, Davis Saunders, PLC, Mandeville, Louisiana, for Plaintiffs/ Respondents, Shelton J. Rayford and Janice A. Dzerve.
Kyle L. Gideon, Davidson, Meaux, Sonnier & McElligott, Lafayette, Louisiana, and Brent A. Talbot, Chaffe McCall LLC, New Orleans, Louisiana, for Defendant/Relator, The National Railroad Passenger Corporation.
*6 (Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MAX N. TOBIAS JR., and Judge DAVID S. GORBATY).

ON REMAND FROM THE SUPREME COURT OF LOUISIANA
JOAN BERNARD ARMSTRONG, Chief Judge.
This matter comes before this Court pursuant to the remand order of the Louisiana Supreme Court for briefing, argument and full opinion. 2006-CC-0230 (La.4/24/06). This matter first came before this Court pursuant to a joint application of the relators, National Railroad Passenger Corporation ("Amtrak") and the Burlington Northern and Santa Fe Railway ("BNSF") invoking this Court's supervisory jurisdiction to review the judgment of the trial court denying the relators' exception of nonjoinder of a party[1]. However, while BNSF's name appeared jointly with that of Amtrak on the original application to this Court, no arguments were made therein regarding BNSF's interest, if any, in the writ. For example, in the original joint application the prejudice this Court was asked to remedy was described as follows:
Trying this lawsuit without Iberia Parish as a party will deprive AMTRAK of its right to obtain complete contribution in the event AMTRAK is found liable to plaintiff and will result in AMTRAK being subject to inconsistent verdicts on its claim for contribution.
The application does not contend that any prejudice will inure to the interests of BNSF. Similarly, in Amtrak and BNSF's joint "Reply to Plaintiffs' Response," the only grievance expressed is:
Because Ayers, supra, is to be applied, as explained in the original writ application, AMTRAK's right to obtain contribution against Iberia Parish could be prejudicially impacted should this case proceed to trial without Iberia Parish as a party. [Boldface added.]
Once again no prejudice is alleged regarding the interests of BNSF.
This Court denied the writ application in an unpublished writ disposition. 2005-C-1273 (La.App. 4 Cir. 12/29/05).
Only Amtrak sought writs from the Supreme Court of Louisiana. BNSF was not even a nominal party to the writ application to the Supreme Court. The writ disposition from the Supreme Court resulting in the remand order referred at the beginning of this opinion referenced Amtrak only and included no reference to BNSF. All pleadings filed by the relator as a result of the remand to this Court have been filed in the name of Amtrak only. BNSF has made no appearance before this Court in connection with this remand. Again, the relator argues of potential prejudice only to Amtrak should proceedings against it be allowed to proceed in the absence of Iberia Parish. No suggestion is made that such proceedings would have any adverse impact on BNSF.
Based on the foregoing, we find that regardless of whatever interest BNSF may have intended to assert when this matter first came before this Court, and we detect none, BNSF has long since abandoned its participation in this writ application. Therefore, the only relator which this Court recognizes at this stage of the proceedings is Amtrak. Other than Amtrak and the plaintiffs, no other parties *7 to this litigation have expressed any interest in these writ proceedings.
Plaintiffs are Shelton J. Rayford, a railroad engineer and resident of Orleans Parish[2], and Janice A. Dzerve, a railroad conductor and resident of Jefferson Parish, who claim damages stemming from injuries received in a May 31, 2002 collision between a passenger train on which plaintiffs were working and a tractor-trailer in Iberia Parish, Louisiana.
Plaintiffs sued Amtrak, their employer, under the Federal Employer's Liability Act (hereinafter "FELA"), 45 U.S.C. § 51, et seq.; they sued BNSF for failing to properly maintain the portion of railroad track where the accident transpired; and they sued Ace Transportation, Inc. ("Ace"), K & E Trucking Company ("K & E"), Liberty Mutual Insurance Company ("Liberty"), Lexington Mutual Insurance Company ("Lexington"), and Sherwin J. Neal, Jr. ("Neal") as, respectively, the owners, insurers, and operator of the truck with which the Amtrak train collided. Plaintiffs' petition also asserts that DOTD is liable for failing to properly construct, maintain, and sign the railroad crossing at issue.
Amtrak argues that the collision occurred at a grade crossing over the BNSF mainline that is owned and maintained by Iberia Parish. Amtrak notes that plaintiffs' petition calls "into question the design, construction, safety, maintenance, and accident history of the grade crossing and its approaches." However, plaintiffs' petition does not name Iberia Parish as a culpable party. On the other hand, Amtrak's answer assigns fault to Iberia Parish.[3] Amtrak claims that Iberia Parish was not named as a defendant in the present matter because it cannot be sued in Orleans Parish under La. R.S. 13:5104, which provides that all "suits filed against a political subdivision of the state . . . shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises." For the same reason, it is uncontested that La. R.S. 13:5104 prevents Amtrak from filing a third-party action against Iberia Parish as part of these Orleans Parish proceedings.
Amtrak and BNSF filed a peremptory exception of nonjoinder of a party on May 28, 2005, asking the trial court to dismiss plaintiffs' case without prejudice or transfer it to the Sixteenth Judicial District Circuit so that the Parish of Iberia can be made a party to the proceedings. Amtrak argues that plaintiffs' case must be dismissed or transferred to Iberia Parish by virtue of the interplay between the United States Supreme Court's decision in Norfolk & Western Railway Co. v. Ayers, 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003) and La. R.S. 13:5104.
In Ayers, the United States Supreme Court held that an employee who suffers an injury caused in whole or in part by a railroad's negligence may recover his or her full damages from the railroad pursuant to FELA, regardless of whether the injury was also caused in part by the actions of a third party. Accordingly, Louisiana's comparative negligence law respecting the apportionment of damages does not apply to plaintiffs' claim against Amtrak. Pursuant to Ayers, Amtrak will *8 be liable for all of plaintiffs' damages in the event it is found to be even partially at fault. If that occurs, Amtrak will have to seek contribution or indemnification from the other joint obligors. The plaintiffs-respondents do not dispute this statement of the law as defined by Ayers.
Amtrak argues that its inability to file a third-party contribution action against Iberia Parish in the present suit mandates the dismissal or transfer of this matter under the joinder articles of the Code of Civil Procedure, La. C.C.P. art. 641, et seq.
La. C.C. art. 1794 defining solidary obligations as to obligors states in pertinent part that:
An obligation is solidary for the obligors when each obligor is liable for the whole performance.
As Amtrak is "liable for the whole performance" under Ayers if even the slightest fault is attributed to it and regardless of the fact that the preponderance of the fault may be attributable to other tortfeasors, i.e., Amtrak would be liable not only for its fault, but for the fault of all others found to be at fault, we find the plaintiffs' claim against Amtrak to be solidary in nature as defined by La. C.C. art. 1794. Accordingly, this Court will treat it as such.
When the question of joinder is considered in the context of a solidary obligation, La. C.C.P. art. 643 is applicable:
One or more solidary obligees may sue to enforce a solidary right, and one or more solidary obligors may be sued to enforce a solidary obligation, without the necessity of joining all the others to the action.
The placement of this Code of Civil Procedure Article in the middle of the chapter of the Code entitled "Joinder" following La. C.C.P. arts. 641 and 642 indicates that a solidary obligor is not entitled to avail itself of the exception of nonjoinder of other obligors as might otherwise be allowed under La. C.C.P. arts. 641 and 642. Therefore, Amtrak has no basis for complaining about the nonjoinder of Iberia Parish.
We find this same public policy of facilitating litigation against a solidary obligor expressed in La. C.C.P. art. 73 concerning venue, and La. C.C. art. 1799 providing that, "the interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs . . .," consistent with this reasoning.
Up to this point we would have to conclude that the trial court was correct in denying Amtrak's exception of non-joinder. However, we also note that La. C.C.P. art. 645 allows this Court sua sponte to notice the failure to join a party. In other words, under La. C.C.P. art. 645 we are not limited to a consideration of how the nonjoinder of Iberia Parish affects Amtrak. We may also take notice of how, under La. C.C.P. art. 641(1) and 641(2)(b), this nonjoinder affects the other parties to this litigation, even if those parties have not complained. Accordingly, bearing in mind that this matter has been remanded to this Court by the Supreme Court, in the interest of thoroughness, we shall conduct a more exhaustive analysis of the question of joinder. Initially, this requires consideration of La. C.C.P. arts. 641 and 642 which must be read together:
La. C.C.P. art. 641 provides:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:

*9 (a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
La. C.C.P. art. 642 provides:
If a person described in Article 641 cannot be made a party, the court shall determine whether the action should proceed among the parties before it, or should be dismissed. The factors to be considered by the court include:
(1) To what extent a judgment rendered in the person's absence might be prejudicial to him or those already present.
(2) The extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by shaping of relief, or by other measures.
(3) Whether a judgment rendered in the person's absence will be adequate.
(4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
First, we note from the undisputed facts of record, there is a potential for conflicting allocations of fault as between proceedings in Iberia and Orleans Parishes, thereby raising concerns under La. C.C.P. art. 641(1) and 642(2). As La. R.S. 13:5104 prevents the joinder of Iberia Parish in these proceedings, La. C.C.P. art. 642 directs this Court to consider the four factors quoted above.
In evaluating those four factors, we interpret the phrase in the first paragraph of La. C.C.P. art. 642, "the court shall determine," as meaning that we should review the findings of the trial court in accordance with the "abuse of discretion" standard of review.
According to plaintiffs' petition, on May 31, 2002, defendant Neal was operating a truck owned by defendants, Ace and K & E, and insured by defendants, Liberty and Lexington, easterly on Louisiana Highway 182 in Iberia Parish. Amtrak asserts that the BNSF mainline track parallels State Highway 182. According to the writ application, Airport Boulevard forms a "T" intersection with Highway 182 at its northernmost terminus and Airport Boulevard crosses the BNSF mainline track. Further, plaintiffs' petition asserts that the Airport Boulevard grade crossing is protected by advance warning signs, crossbars, flashing lights, and gates.
According to Amtrak, Airport Boulevard and the approaches to its BNSF crossing are owned, maintained, and signed by Iberia Parish. Amtrak supports this contention by attaching a copy of an agreement between the Texas and New Orleans Railroad Company (BNSF's ancestor in title) and Iberia Parish whereby the railroad grants an easement to the parish to install and maintain a grade crossing at the site of the present crossing.
Additionally, Amtrak attaches a copy of Judge Anne Lennan Simon's reasons for judgment in Succession of Theriot v. Southern Pacific Transportation Company, et al., Docket No. 55599, Sixteenth Judicial District Court for the Parish of Iberia, Louisiana, a case involving an accident at the same crossing. In her Reasons for Judgment, Judge Simon finds that Iberia Parish built and controls Airport Boulevard and the crossing at issue. Further, Judge Simon allocated twenty-five percent of the fault for that accident to Iberia Parish. Judge Simon's judgment was affirmed by our learned brethren of the Third Circuit, in Succession of Theriot v. Southern Pacific Transportation Company, 560 So.2d 861 (La.App. 3 Cir.1990).
Amtrak attaches portions of the deposition of William Shrewsberry, an engineer in charge of DOTD's railroad section. In *10 the deposition extracts, Shrewsberry confirms that Airport Boulevard and the BNSF grade crossing are owned and maintained by Iberia Parish. Finally, Amtrak cites La. R.S. 48:382(B), which provides that when a highway is constructed across an existing facility or utility, such as a railway line, the agency constructing or causing the construction of the highway shall provide for the construction of an adequate and appropriate crossing and for the subsequent maintenance and replacement of the crossing in accordance with current maintenance standards. Therefore, Amtrak argues that Iberia Parish is statutorily obligated to maintain the crossing at suit because it was the agency that constructed the crossing.
According to plaintiffs' petition and Amtrak's writ application, the events leading up to the present accident occurred when defendant Neal steered his tractor trailer south onto Airport Boulevard in order to go to one of several adjacent industrial complexes. Approximately five feet of the underside of Neal's trailer became lodged on the crossing because the slopes both leading to and away from the grade crossing were too steep. Although Neal was unable to dislodge the trailer from the crossing, both the petition and the writ application assert that he failed to contact his dispatcher, 911, or BNSF through an emergency number posted at the crossing.
The petition and writ application assert that some time after Neal's truck became lodged on the tracks a westbound Amtrak train approached the Airport Boulevard crossing with its horn, bell, and light functions operating. The petition and writ application assert that the train activated the grade crossing's flashing lights and gate arms. Plaintiff, Rayford, the Amtrak engineer, saw Neal's tractor-trailer on the crossing and applied the train's emergency brakes in an effort to avert a collision. However, Rayford's efforts proved unsuccessful and a violent collision occurred between the train and Neal's tractor-trailer. Plaintiffs contend that they suffered severe career-ending injuries because of the foregoing collision.
Amtrak asserts that the underlying accident has resulted in the filing of six additional lawsuits in Iberia Parish, four of which name Iberia Parish as a defendant. According to Amtrak, plaintiffs Rayford and Dzerve are named as defendants in one of the Iberia Parish lawsuits. Amtrak's writ application contends that defendants Ace, K & E, Liberty, Lexington, Neal, and DOTD are also parties to one or more of the Iberia Parish lawsuits. Significantly, Amtrak is allegedly a plaintiff in one of the Iberia Parish lawsuits. Amtrak's petition names Iberia Parish as well as all defendants in the present suit, save BNSF, as defendants in its Iberia Parish suit and seeks recompense for "the payment of claims for personal injuries, medical expenses, loss of wages, and other damages occasioned by certain of Amtrak's passengers and crew members." Accordingly, Amtrak has already effectively instituted a contribution action against Iberia Parish.
Finally, Amtrak asserted in its original writ application that the six Iberia Parish lawsuits have been consolidated for trial. The plaintiffs allege that since the time this matter first came before this Court, the Iberia cases were resolved through a mediation process in which the plaintiffs, Rayford and Dzerve, did not participate. The plaintiffs further allege that as a result thereof, Amtrak reserved all rights to file a claim for contribution relative to Rayford and Dzerve's Orleans Parish claim.
There is no evidence in the record of the procedural history of what has actually transpired in the proceedings in Iberia *11 Parish to support the foregoing contentions of the parties, only argument. However, from this argument we observe that both Amtrak and the plaintiffs agree that substantial litigation has been instituted in Iberia Parish involving this accident. Amtrak and the plaintiffs do not dispute each other's representations about the nature of the proceedings in Iberia Parish. This Court may safely proceed for purposes of this writ application based on the assumption that those proceedings are basically as represented by Amtrak and the plaintiffs.
The trial court supported its ruling by reference to La. C.C. art. 2323, regarding apportionment of fault and this Court's decision in Gatlin v. Entergy Corp., 04-0034 (La.App. 4 Cir. 5/4/05), 904 So.2d 31, writ denied 05-1509 (La.12/16/05), 917 So.2d 1114, which held that fault is to be apportioned among all persons contributing to an injury whether those persons are unidentified, nonparties, or statutorily immune. The trial court concluded:
Therefore, pursuant to La. C.C. art. 2323 and the Fourth Circuit . . . decision in Gatlin, although Iberia Parish is statutorily immune from suit in Orleans Parish, the jury in Orleans Parish will have the ability to apportion fault against Iberia Parish and other Defendants. Contribution and Indemnity may then be sought in Iberia Parish thus, not prejudicing the Defendants in this matter.
Moreover, the Court finds that transferring this matter to Iberia Parish places substantial hardship on the Plaintiffs when this matter can easily be tried in Orleans Parish, where [they] are domiciled.
The absence of Iberia Parish from these proceedings increases the likelihood that Iberia Parish will be found at fault as other defendants could ordinarily be expected to offload fault onto the absent party to the extent possible as the greater the fault ascribed to the absent party, the lesser the amount fault remaining to be ascribed to the other defendants. However, it is difficult to see how this would prejudice Iberia Parish as it is undisputed that Iberia Parish would not be bound by proceedings to which it was not a party. As to the other parties already present (other than Amtrak which is excluded from this consideration by virtue of La. C.C.P. art. 643 as discussed earlier), it seems unrealistic to think that the absence of Iberia Parish from these proceedings would result in a greater percentage of fault being assessed to any of the other Orleans Parish defendants than would have been assessed in Iberia Parish's presence. Therefore, we find that La. C.C.P. art. 642(1) favors affirming the judgment of the trial court.
As we find no prejudice to either the absent party or to those already present under La. C.C.P. art. 642(1), La. C.C.P. art. 642(2) does not apply.
As to La. C.C.P. art. 642's third factor, of whether a judgment rendered in Orleans Parish in the absence of Iberia Parish would be adequate, we find that the only parties who could have any substantial complaints in this regard would be the plaintiffs, as such a judgment would likely assess greater fault against Iberia Parish in its absence and the plaintiffs would not be able to enforce the judgment against Iberia Parish. However, this possibility is mitigated by the fact that the plaintiffs appear able to collect the full amount of any judgment rendered in their favor against Amtrak under Ayers in the event Amtrak is found to be even the slightest bit at fault. As it is the plaintiffs who oppose the nonjoinder exception, they may be said to have waived any objection to the unenforceability of a potential judgment failing to ascribe any fault to Amtrak, *12 while at the same time holding Iberia Parish at fault.
Moreover, while we may consider, on our own motion under La. C.C.P. art. 645, factors affecting, but not raised by, parties, the fact that the other parties to this litigation have notice of these writ proceedings and have not seen fit to join in, is an indication that they do not consider themselves to be seriously aggrieved by any potential outcome. Therefore, we find that La. C.C.P. art. 642(3) provides no basis for reversing the judgment.
Finally, we consider whether under La. C.C.P. art. 642(4) the plaintiffs will have an adequate remedy if the action is dismissed for nonjoinder. The plaintiffs do not contend that there is anything preventing them from pursuing an adequate remedy in Iberia Parish, where Iberia Parish may be joined as a party. Their argument is one of inconvenience only  it is more convenient for them and for certain medical witnesses to go to court in Orleans Parish. As the plaintiffs presumably have access to an adequate remedy in Iberia Parish, La. C.C.P. art. 642(4) arguably weighs in favor of granting Amtrak's nonjoinder exception. This dovetails with the issue of judicial economy. If all of these proceedings could be consolidated into one proceeding the interests of judicial economy would certainly be advanced. Iberia Parish is the only parish where that would be possible under La. R.S. 13:5104. However, we note that judicial economy is not one of the factors mentioned in the joinder articles. Therefore, while judicial economy may be used to tip the balance in a close case, we do not feel that it would be appropriate to give it the same weight as we would to the legislatively prescribed factors found in La. C.C.P. art. 642.
When we weigh the first three factors against the fourth, we find that the weight of the factors favors affirming the decision of the trial judge. Additionally, we add to the scales the strong policy expressed in La. C.C.P. art. 643 which permits suit against Amtrak in Orleans Parish in the absence of Iberia Parish based on the solidary nature of Amtrak's liability under Ayers, along with the failure of any of the other parties to join with Amtrak in objecting to the nonjoinder of Iberia Parish. To put it another way, we find no basis for saying that the trial court abused its discretion in denying Amtrak's exception of nonjoinder.
Bonnette v. Tunica-Biloxi Indians, 2002-919 (La.App. 3 Cir. 5/28/03), 873 So.2d 1, fails to persuade us otherwise for two reasons: First, in Bonnette, La. C.C.P. art. 643 does not apply as it does in this case. Secondly, we disagree with Bonnette's conclusion that among the reasons the nonjoinder exception in that case was well founded was "the trial court's inability to adjudicate . . . fault among other joint obligors." The presence of all those parties potentially at fault is no longer required in order to adjudicate fault. In that regard, we agree with the analysis of Bonnette offered by the Second Circuit in Gibbs v. Magnolia Living Center, Inc., 38,184, p. 13 (La.App. 2 Cir. 4/7/04), 870 So.2d 1111, 1119[4]:
[Bonnette] appears inconsistent with the express wording of La. C.C. art. 2323, Dumas [v. State ex rel. Dept. of Culture, Recreation, and Tourism, 02-0563 (La.10/15/02), 828 So.2d 530,] and our analysis under La. C.C.P. art. 642.
*13 In Industrial Companies, Inc. v. Durbin, 02-0665 (La.1/28/03), 837 So.2d 1207, the Supreme Court, in reversing an appellate decision which made a finding of nonjoinder on its own motion, admonished:
A person should be deemed needed for just adjudication only when absolutely necessary to protect substantial rights.
Id., 02-0665, p. 14, 837 So.2d at 1217.
Applying this admonition to the facts and law discussed in this opinion, we find no error in the judgment of the trial court. Therefore, we deny the relief requested by Amtrak at Amtrak's cost.
WRIT DENIED.
NOTES
[1] Amtrak's exception of nonjoinder was argued on July 6, 2005. On July 7, 2005, the trial court rendered a judgment supported by written reasons, denying Amtrak's exception. There is no exception to the venue in Orleans Parish.
[2] The opposition to the writ application alleges that Rayford is a lifelong domiciliary of Orleans Parish. It is also alleged that all of his treating physicians are located in Orleans Parish.
[3] Additionally, the original writ application asserts that the other named defendants also make issue of Iberia Parish's culpability for plaintiffs' injuries.
[4] In Gibbs, the Second Circuit's La. C.C.P. art. 642 analysis concluded that the present and absent parties would suffer no prejudice by any judgment rendered because any obligation imposed would be joint and divisible and all parties would be able to allege the fault of non-parties pursuant to La. C.C. arts. 2323 and 2324.