| MINOT OBO MINOR | * | NO. 2020-C-0444 |
| THEOD'IOR MINOT | | |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| WAFFLE HOUSE, INC. ET AL | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-09865, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Rosemary Ledet, Judge
Tiffany G. Chase)

Donald Edward McKay, Jr.
McNeil Kemmerly
Robert McKnight
LEAKE & ANDERSSON, LLP
1100 Poydras, Suite 1700
New Orleans, LA 70005

      COUNSEL FOR RELATOR/WAFFLE HOUSE, INC.

Jason Baer
Casey C. Dereus
BAER LAW FIRM
3000 Kingman Street, Suite 200
Metairie, LA 70006

Brian Lee King
Jason F. Giles
THE KING FIRM, LLC
2912 Canal Street
New Orleans, LA 70119

      COUNSEL FOR RESPONDENT/LAURA MINOT ON BEHALF OF
      MINOR THEOD'IOR MINOT

      **WRIT GRANTED; RELIEF DENIED**
      **October 2, 2020**

RML
EAL
TGC

This is a premises liability case. The defendant-relator, Waffle House, Inc., seeks supervisory review of the trial court's August 27, 2020 judgment, overruling its peremptory exception of nonjoinder and denying its motion to dismiss for *forum non conveniens*. For the following reasons, we grant Waffle House's writ application; but, we deny relief.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a fatal shooting that occurred in the parking lot of the Waffle House located at 2940 Elysian Fields Avenue in New Orleans, Louisiana. The shooting resulted in the death of Theodore Jones; he died at the scene. Thereafter, two suits were filed—this suit and a Georgia suit. Waffle House is a named defendant in both suits.[1] This suit was filed first; it was filed by the plaintiff-respondent, Laura Minot, on behalf of one of the three children. The Georgia suit was filed one month later; it was filed by the other two children's

---

[1] For purposes of our analysis, we assume, as alleged by the parties, that Mr. Jones died without ever being married and that he was survived by three children, who are his survival and wrongful death beneficiaries pursuant to La. C.C. arts. 2315.1 and 2315.2.

1

representatives. In both suits, the plaintiffs assert wrongful death and survival claims.

In response to this suit, Waffle House filed a peremptory exception of nonjoinder and a motion to dismiss based on *forum non conveniens*. In support, Waffle House contended that this suit should be dismissed given the pendency of the Georgia suit and given that Georgia is a more appropriate forum. Ms. Minot opposed the exception and the motion, contending that the incident which forms the basis of the suit—Mr. Jones' death—occurred in New Orleans. Ms. Minot further contended that the Georgia plaintiffs are not essential to her suit, such that their nonjoinder would not require dismissal of this suit. Following a hearing, the trial court overruled the exception and denied the motion. This writ followed.

In addressing Waffle House's contentions, we divide our analysis into two parts—the nonjoinder exception and the *forum non conveniens* motion.

## NONJOINDER EXCEPTION

The peremptory exception of nonjoinder requires that the issue be considered under La. C.C.P. arts. 641 and 642. Article 641 provides as follows:

A person shall be joined as a party in the action when either:

(1) In his absence complete relief cannot be accorded among those already parties.

(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:

(a) As a practical matter, impair or impede his ability to protect that interest.

(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

2

But, "[i]f a person described in Article 641 cannot be made a party, the court shall determine whether the action should proceed among the parties before it, or should be dismissed." La. C.C.P. article 642. Pursuant to La. C.C.P. article 642, the factors to be considered are as follows:

> (1) To what extent a judgment rendered in the person's absence might be prejudicial to him or those already present.
>
> (2) The extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or by other measures.
>
> (3) Whether a judgment rendered in the person's absence will be adequate.
>
> (4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

An appellate court reviews the denial of a peremptory exception based on the nonjoinder of a party needed for just adjudication under the abuse of discretion standard of review. *Rayford v. Nat'l R.R. Passenger Corp.*, 05-1273, p. 7 (La. App. 4 Cir. 4/13/07), 962 So.2d 5, 9. Here, the trial court did not abuse its discretion in denying the peremptory exception of nonjoinder.

Ms. Minot seeks wrongful death and survival damages on behalf of her minor child, whose father was killed while a patron at the Waffle House on Elysian Fields Avenue in New Orleans. Louisiana wrongful death actions are governed by La. C.C. art. 2315.2, which sets forth a hierarchy of classes of beneficiaries entitled to bring such actions for the wrongful death of another. The wrongful death action compensates the class beneficiaries under La. C.C. art. 2315.2 for their own individual injury arising out of the victim's death. *Walls v. American Optical Corp*, 98-0455, p. 15 (La. 9/8/99), 740 So.2d 1262, 1274.

3

The Louisiana Supreme Court has recognized that each La. C.C. art. 2315.2 wrongful death beneficiary has their own right to bring a wrongful death action. *Lockett v. State, Dep't of Transp. & Dev.*, 03-1767, pp. 9-10 (La. 2/25/04), 869 So.2d 87, 94 (overruled on other grounds by La. R.S. 13:5106), Explaining, the Supreme Court stated:

> La. C.C. art. 2315.2 clearly contemplates and allows for multiple beneficiaries in each of its four classes. All beneficiaries in the same dominant class have the right to bring their own individual wrongful death action even though all the beneficiaries seek recovery for the damages they individually sustained as a result of the death of the same person, *e.g.* the surviving spouse and children of a deceased person may all bring separate actions to recover the damages they sustained as a result of the wrongful death of that person. Each party's demand for enforcement of this legal right is regarded as a separate action which may be cumulated in a single suit where there is a community of interest, each of the actions is within the jurisdiction of the court and at the proper venue, and all actions are mutually consistent and employ the same form of procedure.

*Lockett*, 03-1767, pp. 9-10, 869 So.2d at 94.

Here, Ms. Minot's child's wrongful death cause of action can proceed without the joinder of the other two wrongful death beneficiaries—the Georgia plaintiffs. Her minor child's entitlement to damages for his father's death is separate and distinct from the Georgia plaintiffs' claims. Her minor child's cause of action and entitlement to damages are based upon his relationship and support derived from his father. Each of the Georgia plaintiffs will have distinct and separate evidence to support their wrongful death claims. The lack of joinder of the Georgia plaintiffs will not affect or prejudice the Georgia plaintiffs' rights to seek damages for the wrongful death of the decedent. Further, one of the two Georgia plaintiffs is a Georgia resident and, thus, not subject to the jurisdiction of the Louisiana courts; the other Georgia plaintiff is a Louisiana resident.

4

Nor will the Georgia plaintiffs be prejudiced by the litigation of Ms. Minot's minor child's survival action in the present action. Louisiana survival actions are governed by La. C.C. art. 2315.1, which sets forth who is entitled to pursue a survival action:

> A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
>
> (1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.
>
> (2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.
>
> (3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.
>
> (4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.
>
> B. In addition, the right to recover all damages for injury to the deceased, his property or otherwise, caused by the offense or quasi offense, may be urged by the deceased's succession representative in the absence of any class of beneficiary set out in Paragraph A.

The issue of whether a survival action is a joint obligation was addressed in *Gibbs v. Magnolia Living Ctr., Inc.*, 38,184 (La. App. 2 Cir. 4/7/04), 870 So.2d 1111. There, the appellate court observed that a survival action is a separate and distinct cause of action from a wrongful death action, as the survival action "'permits recovery only for the damages suffered by the victim from the time of injury to the moment of death.'" *Gibbs*, 38,184, p. 5, 870 So.2d at 1115 (quoting *Taylor v. Giddens,* 618 So.2d 834, 840 (La. 1993)). "'The action is based upon the victim's right to recovery being transferred by operation of law to the beneficiary.'" *Id.*

5

In the *Gibbs* case, the defendant asserted that the plaintiff's petition was ambiguous as to whether the plaintiff was the only child of the decedent and whether other potential plaintiffs existed who could assert a survival action. The court stated that the defendant's assertions presented the "question of whether one member of the class of beneficiaries for the survival action has capacity to represent the class as a whole." *Gibbs*, 38,184, pp. 5-6, 870 So.2d at 1115.

Resolving the issue, the *Gibbs* court considered the Louisiana Civil Code articles governing joint obligations. The court cited to La. C.C. art. 1788, which provides, in part, that "[w]hen one obligor owes just one performance intended for the common benefit of different obligees, neither of whom is entitled to the whole performance, the obligation is joint for the obligees"; and La. C.C. art. 1789, which provides that "[w]hen a joint obligation is divisible . . . each joint obligee is entitled to receive . . . only his portion." The *Gibbs* court concluded:

> The delictual obligation of the tortfeasor to pay for the damages experienced by the victim before her death represents a single performance owed to all Article 2315.1 survival beneficiaries and is therefore a joint obligation for the obligees. Any judgment for the payment of money damages is a divisible obligation. La. C.C. art. 1815. Therefore, even assuming that there are other members of the beneficiary class under Article 2315.1, Gibbs would have procedural capacity to recover at least her portion of the survival action damages through this suit. The petition is not subject to either the vagueness exception or the exception of lack of procedural capacity because the alleged delictual obligation is joint and divisible for Gibbs who is at least "a member" of the beneficiary class.

*Gibbs*, 38,184, p. 6, 870 So.2d at 1115.

This court, in *Palermo v. Port of New Orleans*, 04-1804, 04-1805 (La. App. 4 Cir. 1/19/07), 951 So.2d 425, was presented with the issue of construing the language in a trial court's judgment that granted the plaintiffs' survival action and awarded damages in the amount of $500,000. In determining that the trial court

6

intended for the plaintiffs to share in the total damages of $500,000, this court cited the *Gibbs* court's statement that "the delictual obligation of the tortfeasor to pay for damages suffered by the victim before her death represented a single performance owed to all beneficiaries of the deceased, which was divisible among those beneficiaries." *Palermo*, 04-1804, 04-1805, pp. 8-9, 951 So.2d at 433.

Here, Waffle House cites *Rainey v. Entergy Gulf States, Inc.*, 01-2414 (La. App. 1 Cir. 7/2/03), 859 So.2d 63, in support of its exception of nonjoinder. Waffle House contends that the *Rainey* case supports its position that all La. C.C. art. 2315.1 beneficiaries must be included in the same lawsuit asserting a survival action.

In *Rainey*, the original plaintiff, a contract employee with the defendant, filed suit against the defendant for injuries sustained on the job. The defendant-employer sought to assert the affirmative defense of statutory employer. The trial court denied the defendant's motion, and the defendant appealed. During the pendency of the appellate proceedings, the plaintiff died. The testamentary executor of the plaintiff's succession filed a motion to be substituted as plaintiff and sought a rehearing of the decision by the appellate court that reversed the trial court. On rehearing, the appellate court determined that the plaintiff's surviving children were required to be joined as plaintiffs because it was arguable that under La. C.C. art. 2315.1, the decedent's testamentary executor was not the proper party to pursue the claims against the defendant. The appellate court observed:

> [I]f Rainey's children are not parties to this action, a conclusive judgment herein for, or against, Entergy will not bar a subsequent action by them against Entergy because *res judicata* does not apply. Thus, if Rainey's children are not joined as parties herein and subsequently file their own action on Rainey's cause of action, the following will occur: (1) the courts will have to adjudicate two cases on a single cause of action; (2) Entergy will have to defend two suits

7

on a single cause of action; and (3) if there are two suits on Rainey's single cause of action, three results could occur: (a) Entergy prevails in both cases; (b) Entergy prevails in one case and is cast in judgment in the other (this is inconsistent); or (c) Entergy is cast in judgment in both (and pays twice on a single cause of action). Having two trials on this one cause of action is not in the best interest of judicial economy. Having two actions litigated on one cause of action creates the potential for inconsistent and patently unjust results.

*Rainey*, 01-2414, p. 4, 859 So.3d at 66.

Waffle House's reliance on the *Rainey* case is misplaced. Rainey is distinguishable, factually and legally. The original plaintiff in *Rainey* filed suit for her own injuries. After her death, her testamentary executor filed a motion to be substituted as plaintiff. On rehearing, the appellate court noted that under La. C.C. art. 2315.1, the plaintiff's surviving children were the proper parties to be substituted as plaintiffs. Here, Ms. Minot is suing on behalf of her minor child, who is a proper plaintiff under La. C.C. art. 2315.1. As noted in the *Gibbs* case, which this court quoted in *Palermo*, a survival action is divisible among the La. C.C. art. 2315.1 beneficiaries. Because the survival action is divisible, each beneficiary may sue to recover their virile share on their own behalf. The beneficiaries under La. C.C. art. 2315.1 do not have to be joined in the same lawsuit. Hence, the trial court did not abuse its discretion in denying the Waffle House's peremptory exception of nonjoinder.

### *FORUM NON CONVENIENS* MOTION

Waffle House also contends that the trial court erred in denying its *forum non conveniens* motion. *Forum non conveniens* is governed by La. C.C.P. art. 123, which provides in pertinent part:

A. (1) For the convenience of the parties and the witnesses, in the interest of justice, a district court upon contradictory motion, or upon the court's own motion after contradictory hearing, may transfer a civil case to another district court where it might have been brought;

however, no suit brought in the parish in which the plaintiff is domiciled, and in a court which is otherwise a court of competent jurisdiction and proper venue, shall be transferred to any other court pursuant to this Article.

(2) For purposes of Subparagraph (1) of this Paragraph, domicile shall be the location pursuant to Article 42 where the plaintiff would be subject to suit had he been a defendant.

B. Upon the contradictory motion of any defendant in a civil case filed in a district court of this state in which a claim or cause of action is predicated upon acts or omissions originating outside the territorial boundaries of this state, when it is shown that there exists a more appropriate forum outside of this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interest of justice, the court may dismiss the suit without prejudice; however, no suit in which the plaintiff is domiciled in this state, and which is brought in a court which is otherwise a court of competent jurisdiction and proper venue, shall be dismissed pursuant to this Article.

A trial court's ruling on a motion to dismiss for *forum non conveniens* is reviewed by a court of appeal under the abuse of discretion standard. *Cantuba v. American Bureau of Shipping*, 01-1139-42, p. 2 (La. App. 4 Cir. 02/13/02), 811 So.2d 50, 52. The abuse of discretion standard is appropriate because La. C.C.P. art. 123 confers a great amount of discretion on the trial court in determining if the conditions for *forum non conveniens* are fulfilled; and, subsequently, an appellate court reviews whether or not the trial court abused this discretion. *Martinez v. Marlow Trading, S.A.,* 04-0538, p. 4 (La. App. 4 Cir. 2/2/05), 894 So.2d 1222, 1225. The trial court did not abuse its discretion in denying Waffle House's motion.

"'The doctrine of *forum non conveniens* presupposes at least two forums where the defendant is amendable to process and simply furnishes criteria for choice between them.'" *Martinez*, 04-0538, p. 5, 894 So.2d at 1226 (quoting *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 341 (5th Cir. 1999)). Thus,

a defendant seeking dismissal, at the trial level, based upon *forum non conveniens* must first establish that an alternate forum that is both available and adequate**.** *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 221 (5th Cir. 2000). If the trial court concludes that an alternative forum exists, it then considers all of the relevant private interest factors**,** balancing those factors weighing in favor of dismissal with the deference given to the plaintiff's choice of forum. The relevant private interest factors include:

- The convenience of the parties and witnesses;

- The access to the sources of proof, as well as viewing of the premises if appropriate;

- The cost of obtaining attendance of witnesses; and

- The advantages and obstacles to a fair trial.

*Martinez*, 04-0538, p. 6, 894 So.2d at 1226.

After considering the private interest factors, a court then considers the public interest factors to determine whether retention of jurisdiction would be unnecessarily burdensome to either the defendant or the court. The public interest factors include the following:

- The administrative difficulties flowing from court congestions;

- The local interest in having localized controversies decided at home;

- The interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;

- The avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law; and

- The unfairness of burdening citizens in an unrelated forum with jury duty.

*Martinez*, 04-0538, p. 7, 894 So.2d at 1227.

The *Martinez* case involved a plaintiff who was domiciled in Honduras and injured while working on a vessel in navigation, which was owned and operated by Marlow Trading. The plaintiff initially obtained treatment for his injuries when the vessel docked in Mexico. After receiving treatment in Mexico, the plaintiff departed on the vessel to Panama, where the plaintiff was discharged and sent home to Honduras. The plaintiff filed suit in Orleans Parish for his injuries on the basis that he obtained his employment with Marlow Trading through an agency that was based in New Orleans. The defendants filed a motion to dismiss on the basis that Orleans Parish was not an appropriate forum and that Honduras or Panama would be an appropriate forum. The trial court granted the motion. The plaintiff appealed. On appeal, this court affirmed, holding that Honduras or Panama would be the appropriate forum. In so holding, this court observed:

> Mr. Martinez is domiciled and has received the remainder of his medical treatment in Honduras; therefore Honduras is also the location of his treating physicians who would be required to testify at trial. The previous treating physicians are domiciled in Mexico and would be deposed in either forum where the trial is conducted.

*Martinez*, 04-0538, p. 6, 894 So.2d at 1226-27. This court also recognized that the costs of obtaining witnesses would be lessened if trial was held in either Panama or Honduras, especially given the witnesses were not located in Orleans Parish and the vessel was not registered in Orleans Parish. Further, the plaintiff's injury did not occur in Orleans Parish; and the plaintiff did not receive treatment for the injuries in Orleans Parish.

In *Brumley v. Akzona, Inc.,* 09-0861 (La. App. 4 Cir. 1/13/10), 45 So.3d 1115, the plaintiff, a Texas resident, filed wrongful death and survival claims in a Louisiana state court. The plaintiff asserted that his father died from malignant mesothelioma, resulting from his exposure to asbestos while working as an

insulator as various worksites in Texas and Louisiana. Several defendants filed motions to dismiss on the basis of *forum non conveniens*, arguing that Texas was a more appropriate forum. The trial court granted the motions. The plaintiff appealed. On appeal, this court affirmed, holding that the trial court did not abuse its discretion in finding that the private interest factors supported Texas as the more convenient forum. In so holding, this court observed:

> The trial court found that the private interest factors weighed heavily in favor of Texas as the more convenient forum. He noted that decedent and plaintiff are Texas residents. Decedent received all of his medical treatment in Texas, and therefore all of the medical evidence and witnesses are situated in Texas rather than Louisiana. Although plaintiff named approximately fifty-three defendants allegedly responsible for Mr. Brumley's exposure to asbestos, he claimed only eight Louisiana job sites and a single Orleans Parish location. The vast majority of decedent's employers and work sites are in Texas. The court further noted that seven of the eight fact witnesses are in Texas. The expert witnesses who will testify on plaintiff's behalf are located all over the country, and therefore are not centrally located and restricted to Louisiana, Texas, or any other state. After reviewing the facts and evidence in this case, we find that the trial court's conclusion that the private interest factors supported Texas as the more convenient forum was not an abuse of discretion.

*Brumley*, 09-0861, p. 4, 45 So.3d at 1117.

In *Brumley*, this court discussed *Boudreaux v. Able Supply Co.,* 08-1350 (La. App. 3 Cir. 10/7/09), 19 So.3d 1263—a case involving factual and legal issues similar to this case. The *Boudreaux* case involved a decedent's widow and children who filed wrongful death and survival actions, asserting that the decedent had contracted and died from malignant mesothelioma, resulting from his exposure to asbestos while working as an insulator. In that case, the plaintiffs were all Texas residents; the decedent likewise was a Texas resident. The decedent allegedly was exposed to asbestos while working as an insulator at worksites in Texas and Louisiana. The defendants filed motions for dismissal for *forum non conveniens*,

12

asserting that Texas was the more convenient venue. The appellate court affirmed the trial court's judgment granting the motions to dismiss. The appellate court agreed with the trial court that the private interest factors supported a finding that Texas was a more convenient forum. In so holding, the appellate court observed:

> The trial court specifically noted in its reasons for judgment that decedent and the plaintiffs were lifelong residents of Texas. The only contact with Vermilion Parish was for an eight-month period spent working for his brother-in-law's company, Gulf Coast Engine Company, on a fishing boat. The trial court also considered that all medical treatment of decedent occurred in Texas, and therefore all of the medical evidence and witnesses were situated in Texas rather than Louisiana. The only witness plaintiffs identified as "will call" for trial, living within 25 miles of the Vermilion Parish courthouse, was decedent's brother-in-law. The record also establishes, of the twenty-five named defendants, only two were located in Louisiana, and none in Vermilion Parish. Twenty-two of the named defendants were located in Texas, and one in the state of Washington.

*Boudreaux*, 08-1350, p. 4, 19 So.3d at 1268.

Continuing, the appellate court in *Boudreaux* observed that the public interest factors required dismissal under the *forum non conveniens* doctrine, quoting the trial court's reasons in support of its conclusions:

> [T]he fact is that you [plaintiffs and decedent] come from Texas having lived there all your life, having been treated all your life. You now find the fact that eight months [the decedent] worked in a boat in Vermilion Parish. You now subject not only all these people, but the citizens of Vermilion Parish, the Court of Vermilion Parish to what is a very costly, very time consuming process that hinges upon the only reason because you can get supposedly all the people into this one jurisdiction ..., but the fact is I think I have an obligation to look at these facts and say to myself, is it really more convenient and is it really the most convenient? Not whether it's more convenient for the plaintiffs, not whether its have you been denied the best source of an area. I think you take all these things together, and to me, you have to say that this Texas plaintiff, this Texas individual who was injured and died obviously from exposure—nobody contends that's not true— whether or not we are to, in Vermilion Parish, be the ones to litigate this 23–year exposure to asbestos because he happened to work for his brother-in-law for eight months on a pogey boat in Vermilion Parish, and I think not.

13

*Boudreaux*, 08-1350, p. 5, 19 So.3d at 1269.

Waffle House cites *Brumley* and *Boudreaux* in support of its argument that Georgia is a more appropriate venue for the present litigation. The factual scenario presented here, however, is entirely different from that in the cases Waffle House cites. Here, the decedent, Mr. Jones, while a resident of Georgia at the time of his death, was at one time a Louisiana resident. Most importantly, Mr. Jones' children's wrongful death and survival claims are not predicated upon acts or omissions originating outside of Louisiana. To the contrary, their claims originate out of the fatal shooting of Mr. Jones at a Waffle House on Elysian Fields in New Orleans.

The private interest factors support a finding that Orleans Parish is a convenient and an appropriate forum. Mr. Jones was shot and killed in Orleans Parish. Thus, Orleans Parish is convenient for the parties and witnesses because all relevant lay witnesses are from the New Orleans area. The police who investigated the incident, the emergency medical personnel who treated Mr. Jones, and the forensic coroner who performed the autopsy are all from Orleans Parish. The access to the proof as well as the viewing of the area where Mr. Jones was killed support venue in Orleans Parish.

The public interest factors likewise support a finding that Orleans Parish is a convenient and an appropriate forum. Because the matter arises from a fatal shooting at a local restaurant, there is a local interest in this controversy. Louisiana law would govern, and there is no unfairness in jurors considering a case in which the incident occurred in Orleans Parish.

Given these private and public interest factors, Orleans Parish is a more convenient forum than a Georgia court. Thus, we cannot conclude that the trial

court abused its discretion in denying the motion to dismiss for *forum non conveniens*.

## CONCLUSION

In sum, we find no abuse of discretion in the trial court's judgment overruling the peremptory exception of nonjoinder and denying the motion to dismiss for *forum non conveniens*. Accordingly, the writ application is granted, but relief is denied.

**WRIT GRANTED; RELIEF DENIED**