ROLAND L. BELSOME, Judge.
| iDefendants-Appellants, Ora Price, Darryl Price, and Leonard Price, appeal file judgment granting a Rule to Evict filed by Plaintiffs-Appellees. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Defendants-Appellants were residents of the Treasure Village Apartments[1] at 3110 Edith Weston Place, Unit 29, in New Orleans, Louisiana. Pursuant to the residential lease agreement, Ora, Darryl, and Leonard Price (“the Prices”) were the only authorized tenants of the leased premises. Plaintiff-Appellee, Interstate Realty Management Company, manages the Treasure Village Apartments (“Interstate”). Interstate alleges that the Prices allowed Oneal and Leroy Price, Ora Price’s grandsons, also to reside at the leased premises, in contravention of the lease agreement.
Interstate submits that no written approval was obtained for Oneal and Leroy Price to reside in the leased premises, and that neither Oneal nor Leroy were members of the household pursuant to the lease agreement. Furthermore, Interstate asserts that Oneal and Leroy Price violated the apartment complex rules and were suspected of engaging in drug transactions and other criminal activity in the complex. | gSpecifically, on December 5, 2010, both Oneal and Leroy Price were in the Treasure Village Apartments near the leased premises when a drive-by shooting occurred. The shooting resulted in gunshot wounds to Leroy Price’s leg as well as property damage to the complex.
On December 7, 2010, Calisha Jolla, the site manager at the Treasure Village Apartments, issued a “Notice of Infraction” to Ora Price, regarding the December 5, 2010 shooting. The Notice cited the provisions of the lease agreement that had been violated and advised Ms. Price that a mandatory hearing would be held with the *800 site manager on December 10, 2010 to discuss the shooting. Interstate asserts that at the December 10, 2010 meeting, the Price family members were combative with the office manager and were asked to leave the office, and that such behavior was also a breach of the lease agreement, which mandates that tenants cooperate with and not act abusively towards the site manager’s staff.
On January 4, 2011, Robin Maxfield, the District Manager, issued a 30-day Notice of Termination of Lease — Notice to Vacate, which notified the Prices that the lease would terminate effective February 4, 2011. The notice included reasons for the termination and advised the Prices that the Notice to Vacate could be discussed within seven days with the site manager. Interstate submits that the Prices did not request a meeting with the site manager, while the Prices maintain that they requested such a meeting.
The Prices filed suit in the United States District Court for the Eastern District of Louisiana; the suit was ultimately dismissed.
IsFoIIowing the dismissal of the Prices’ federal suit, on May 20, 2011, Interstate filed a Rule to Evict. On June 6, 2011, the Prices filed an answer and reconventional demand. After a trial on June 16, 2011, the court granted the Rule to Evict and ordered the Prices to vacate the leased premises within twenty-four hours. The Prices subsequently filed a motion for written reasons for judgment, notice of appeal, and a motion for stay pending sus-pensive appeal. The court granted the stay, set bond, and issued written reasons.
In the requested written reasons, the trial court acknowledged the lease provisions regarding the residents’ obligation to assure that no person under the residents’ control engages in any criminal activity that threatens the health, safety or right to a peaceful enjoyment of the residence; the residents’ obligation to refrain from, and to cause guests or members of the .household to cooperate with and to refrain from acting or speaking in an abusive or threatening manner towards neighbors or the Site Manager’s staff; and the residents’ obligation to ensure that guests or members of the household refrain from any criminal activity, which includes but is not limited to crimes of violence against persons or property, committed on or off residence.
With regard to the Prices’ argument that they were not afforded a formal grievance hearing before the Notice to Vacate was issued, the court relied upon testimony from Robin Maxfield, the property manager of Interstate Realty Management Company, and determined that the Prices set forth no credible evidence that a formal grievance hearing was requested by the Prices or their representative.[2]
| ¿With regard to whether Oneal and Leroy Price actually lived at 3110 Edith Weston Place in contravention of the lease agreement, the court noted that Oneal Price’s Louisiana Identification Card, which listed 3110 Edith Weston Place, New Orleans, Louisiana as his address, had been introduced into evidence; the issue date was March 10, 2010. The court further noted that both the December 5, 2010 incident report from First Choice Security and the NOPD incident report listed Leroy Price’s address as 3110 Edith Weston Place,[3] New Orleans, Louisiana.
*801 With regard to the specific language contained in the lease agreement, the court cited to the lease agreement’s “One Strike Policy.” The policy provided in part:
The head(s) of household is responsible for the actions of the household members, guests and other persons under the family?s control (all of the foregoing are considered Covered Person(s)). The Manager will evict a family by judicial action for criminal activity if it determines that the covered person(s) has been engaged in criminal activity regardless of whether the Covered Person(s) has been arrested or convicted for such activity and without satisfying the standard of proof used for criminal conviction. Criminal activity is cause for eviction even in the absence of conviction or arrest, (emphasis by trial court.)
The One Strike Policy further provided:
The discovery of information regarding applicant families and resident families who have committed crimes or activities reflecting disturbance of neighbors, destruction of property, or habits that adversely affect the health, safety or welfare of others will be used by Manager in the screening of applicants for suitability of tenancy and residents for the purpose of determining continued occupancy and eviction procedures, (emphasis by trial court.)
The court also referenced testimony from Kevin Johnson, the president of First Choice Security and former NOPD officer, who confirmed that he regularly | .^encountered Oneal and Leroy Price near the leased premises at all hours of the day and night; that Oneal and Leroy Price permitted a daily stream of vehicles and unknown persons onto the leased property at all hours; that there was an ongoing inquiry by NOPD into suspected criminal activity involving Oneal and Leroy Price; that on one occasion in particular, Oneal Price fled after being stopped by the NOPD at 3110 Edith Weston Place, backed his vehicle into a First Choice Security vehicle, and was subsequently arrested; and that Oneal Price was serving jail time as a result of the incident and also had a prior drug arrest.
The trial court concluded that Oneal and Leroy Price’s unauthorized occupancy and activities in the apartment complex threatened the health, safety and right to peaceful enjoyment of the premises of the residents, in violation of the lease agreement, and granted the Rule to Evict.[4] This appeal followed.
STANDARD OF REVIEW
Factual findings are reviewed pursuant to the manifestly erroneous or clearly wrong standard. Orleans Sheet Metal Works & Roofing, Inc. v. Rabito, 2004-0359, p. 3 (La.App. 4 Cir. 8/17/05), 916 So.2d 1143, 1146. Likewise, it is well-settled that an appellate court may not set aside a trial court’s finding of fact unless it is clearly wrong. Id. “Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Id. (citing Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978)). Similarly, “[wjhere two permissible views of the evidence exist, the fact-finder’s choice between them Rcannot be manifestly wrong.” Id. (citing Rosell, supra at 845; Watson v. State Farm Fire & *802 Casualty Ins. Co., 469 So.2d 967 (La.1985); Arceneaux, supra at 1333).
If the trial court’s factual conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trial court. Rabito, 2004-0359, pp. 3-4, 916 So.2d at 1146 (citing Rosell, supra at 844). “The reviewing court must always keep in mind that if a trier of fact’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that if it had been sitting as trier of fact, it would have weighed the evidence differently.” Rabito, supra, 2004-0359, p. 4, 916 So.2d at 1146-1147 (citing Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990)). Accordingly, “[f]or the reviewing court, the issue to be resolved is not whether the trier of fact was wrong but whether the factfinder’s conclusions were reasonable.” Id. (citing Stobart, supra at 883; Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305; Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.1/29/96), 666 So.2d 1073, 1077).
DISCUSSION
Appellants argue that the trial court erred in granting the Rule to Evict, adversely affecting Appellants’ right to occupy the property under federal law, and that the evidence adduced was insufficient to support such a ruling.[5]
17With regard to the evidence set forth in support of the Rule to Evict, Appellants assert that Leroy Price was not a member of Ora Price’s “family composition” residing at 3110 Edith Weston Place, nor a guest under Ora Price’s control. Appellants further contest the credibility of the witnesses who testified at trial, arguing that Robin Maxfield and Kevin Johnson had no personal knowledge of the December 5, 2010 shooting incident, nor of any other allegations in the notice to vacate. Appellants further argue that the judgment below was obtained by fraud and ill practices because no bill of information was filed demonstrating that Leroy or Oneal Price committed any criminal act on December 5, 2010.
This Court has recognized that pursuant to La. C.C.P. art. 2004, “ill practices’ are defined as any improper practice or procedure which operates, even innocently, to deprive a litigant of some legal right.” Green v. Neese, 99-3223 (La.App. 4 Cir. 9/20/00), 769 So.2d 694, 696 (emphasis in original). A legal right in the context of Article 2004 is considered the opportunity to appear and assert a defense. Id. Therefore, a court must “determine whether the party seeking annulment has met the burden of showing how he was prevented or excused’ from asserting his claims or defenses.” Id. at 696-697 (citing Foret v. Terrebone, Ltd., 93-676 (La.App. 5 Cir. 1/25/94), 631 So.2d 103; State v. Turner, 97-0396 (La.App. 4 Cir. 12/23/97), 705 *803 So.2d 293). The record in this case does not evidence that Appellants were deprived of some legal right pursuant to La. C.C.P. art. 2004.
Appellants also allege that grievance procedures were not complied with, and that no formal or informal hearing was held, despite a request. In this case, the Prices received a 30 day Notice of Termination of Lease—Notice to Vacate on Is January 4, 2011, which notified the Prices that the lease would terminate effective February 4, 2011, and that they could meet with the site manager within seven days to discuss the notice. The trial court made a factual determination that the Prices never requested a meeting or hearing beyond the one that occurred on December 10, 2010.[6] Furthermore, Interstate did not file its Rule for Possession until May 20, 2011; thus, Appellants were plainly provided proper notice and an opportunity to be heard prior to the initiation of the eviction proceedings in compliance with Article 4702.[7]
Considering the testimony and evidence presented at trial, we do not find that the trial court erred in granting the Rule to Evict. The court reviewed the evidence and heard the testimony and made factual conclusions and credibility determinations, which we cannot say were manifestly erroneous or clearly wrong. A review of the record demonstrates that sufficient evidence was presented to the trial court to establish that Appellants violated numerous terms of the lease agreement, particularly the provision which provided that residents must ensure that no person under a resident’s control may engage in “[a]ny criminal activity that threatens the health, safety or right to peaceful enjoyment of the residence by other residents.”
| ¡Appellants also assert that they were entitled to a suspensive appeal. Article 4735 provides as follows:
An appeal does not suspend execution of a judgment of eviction unless the defendant has answered the rule under oath, pleading an affirmative defense entitling him to retain possession of the premises, and the appeal has been applied for and the appeal bond filed within twenty-four hours after the rendition of the judgment of eviction. The amount of the suspensive appeal bond shall be determined by the court in an amount sufficient to protect the appellee against all such damage as he may sustain as a result of the appeal.
La.Code Civ. Proc. art. 4735. In this case, the Prices did not answer the Rule for Possession under oath and sign it personally. Accordingly, Appellants were not entitled to a suspensive appeal.
CONCLUSION
We cannot say that the trial court’s factual conclusion that Appellants violated the terms of the lease agreement by affecting the health, safety, or right to peaceful enjoyment of residence by the other resi *804 dents is manifestly erroneous or clearly wrong. For the foregoing reasons, the trial court’s judgment granting the Rule to Evict is hereby affirmed.
AFFIRMED

. The Treasure Village Apartments are a subsidized public housing complex.

. The trial court found that because the basis of the Rule to Evict was for lease violations, and not non-payment of rent, the continued payment of rent did not vitiate the eviction proceeding.

. The police report also listed the location of the shooting as 3110 Edith Weston Place.

. The lease agreement provided that no person under a resident's control may engage in "[a]ny criminal activity that threatens the health, safety or right to peaceful enjoyment of the residence by other residents” and that the residents must also assure that no person under their control engage in "[a]ny drug-related criminal activity on the residence.”

. Appellants also argue that the trial court committed legal error in disregarding a federal question with regard to the controversy; however, in light of the dismissal of Appellants? federal suit, we find it unnecessary to address this assignment of error. At trial, Stanley Price, Ora Price's son, testified as follows:
THE COURT: Well, let me further go in that line of questioning, because it's one of the questions I had. The [federal] suit is on appeal. What was the decision of the district court? A. The district court said that—
THE COURT: Was the matter dismissed or what? That's the basic question.
A. Yeah. He dismissed it.
THE COURT: He dismissed your claim?
A. Said it was an eviction claim. But we filed an appeal saying that it was a federal question on the grounds of her constitutional and civil rights.

. Appellee notes that even though Interstate allowed the Prices to be heard on December 10, 2010, it was not even required to do so under the One Strike Policy, which provides that "[f]ormal or informal hearing pursuant to the Residential Community’s grievance policy shall not be available for evictions for violent or criminal activity." (emphasis added.)

. La.Code Civ. Proc. art. 4702 provides:
When an owner of immovable property wishes to evict the occupant therefrom, after the purpose of the occupancy has ceased, the owner, or his agent, shall first cause a written notice to vacate the property to be delivered to the occupant.
This notice shall allow the occupant five days from its delivery to vacate the premises.