Judge Regina Bartholomew-Woods
Defendant, Pamela Jones (hereinafter "Appellant"), suspensively appeals the September 21, 2017 judgment of the First City Court of New Orleans ordering Appellant's eviction from housing leased to her by Plaintiff, Second Zion Baptist Church (hereinafter "Appellee" or "the church"). For the reasons that follow, we reverse the judgment of the lower court.
FACTUAL AND PROCEDURAL BACKGROUND
Due to her mental disabilities, Appellant receives assistance through various programs, including a housing subsidy through Unity of Greater New Orleans ("Unity"). Appellant's lease with Appellee commenced in November 2015, for a period of one year, continuing on a month-to-month basis thereafter. Unity entered into a Housing Assistance Payment ("HAP") contract with Appellee to make Appellant's rent payments.
The lease between Appellant and Appellee specifically prohibited pets. At the time the lease was signed in November 2015, Appellee claims to have been unaware of the fact that Appellant had an emotional support dog. In February of 2016, after Appellee became aware of the dog, it accepted payment of one hundred dollars *11 from Appellant as a pet fee. The lease further provided a non-exhaustive list of prohibited activities constituting "nuisance," such as "disturbing neighbors."
On August 14, 2017, Appellee sought to evict Appellant, providing a "5 Day Notice to Vacate Premises."[1] The notice stated "Owner wants possession of property due to dog on premises." Efforts by Appellant's social workers to reach a compromise with Appellee were unsuccessful, and on September 11, 2017, Appellee filed an "Application for Rule for Possession of Premises" on the same basis as that provided in the prior notice to vacate.
A hearing on the rule for possession was held on September 21, 2017. Prior to any testimony, counsel for Appellant noted that Appellee had apparently accepted rent after the August 14, 2017 Notice to Vacate, arguing that such acceptance "should vitiate the eviction." The court responded that rent could be accepted after the notice, but not after the petition for possession. Counsel then indicated that she was not sure of the exact date payment was accepted, stating "[i]t sounds like they accepted it a few days before the Rule for Possession[,]" and that it was their position "that it can't be accepted after the Notice [to Vacate.]" The court took a break to address unrelated matters, and the matter was not discussed further.
When the court resumed the proceeding, the court discussed the matter on the record with members of the church who were present for the hearing. Vernon Charles, Deacon of the church, explained to the court that Appellant's dog presented a problem because "[i]nsurance said we do not have insurance for the dog."
Bobby Temple, a member of the church's trustee board and the church's property manager, explained that complaints had been made about the dog. He also stated that Appellant had been asked to clean up after her dog, that he sent texts to Appellant, and that she responded that she would clean up after the dog. He explained that the previous preacher who managed the church had accepted the pet deposit from Appellant, but that he had left the church about eleven months prior to the hearing. Mr. Temple said the dog was "running out the yard and she's not picking up behind the dog[,]" referring to Appellant. He responded affirmatively to the court's question that he had personally seen the dog, stating "I texted her ... about the dog running through the yard." He then proceeded to show the court a text apparently concerning another resident's dog, and the court itself stated the text was "unclear" and that the text looked as though it was regarding "the dog from the other case." Appellant's counsel objected to many of the remarks based on hearsay grounds.
Counsel for Appellant then proceeded to call and question Mr. Charles on the stand as an adverse witness.
The lease agreement between the two parties was entered into evidence, as was the receipt provided to Appellant reflecting her payment of a one hundred dollar pet fee several months later. Counsel also introduced a letter from Danielle Petroni, a Licensed Clinical Social Worker ("LCSW"), dated August 9, 2017, indicating Appellant had been diagnosed with a disability "that limits her psychological functioning" and that Appellant needs "an emotional support animal in order to live independently." The letter further requested *12 that "reasonable accommodations" be made for Appellant as a result of her disability.[2] He stated that he never personally saw the dog soiling the yard, only that others notified him of it, but that he did observe the dog acting "very aggressively" by barking at passersby. Additional questioning by the court revealed that the insurance policy was not brought to court, and thus was not reviewed by the court prior to its ruling.
Mr. Temple testified next that he never personally saw the dog soiling the yard. He explained that on one occasion, while doing work on in the yard, the dog got out of Appellant's apartment and began "charging." He grabbed a two-by-four to keep the dog at bay, the dog backed on to Appellant's porch, and Mr. Temple exited the gate.
Appellant testified that she told the church about the dog before moving in, and paid the one hundred dollar fee later because she did not have the money right away. She stated that she picked up after her dog, but that a neighbor usually would walk it.
The court ruled from the bench in favor of Appellees, stating it was "very concerned about the aggressive behavior of the dog." The court cited the insurance policy, and that liability for the dog would be "more than unfair."[3]
STANDARD OF REVIEW
We review the lower court's eviction ruling under the manifest error/clearly wrong standard of review. Armstrong Airport Concessions v. K-Squared Rest., LLC , 2015-0375, p. 9 (La.App. 4 Cir. 10/28/15), 178 So.3d 1094, 1100. "A judgment of eviction must be reversed when the lessor fails to prove the legal ground upon which the lessee should be evicted." Hous. Auth. of New Orleans v. King , 2012-1372, p. 4 (La.App. 4 Cir. 6/12/13), 119 So.3d 839, 842 (citing Kenneth and Allicen Caluda Realty v. Fifth Business, LLC, 2006-608, p. 4 (La.App. 5 Cir. 12/27/06), 948 So.2d 1137, 1138 ).
ANALYSIS
Assignment of Error One
Appellant first argues the lower court erred by granting the eviction despite trial counsel's representations that Appellee had accepted rent after the notice to vacate. Appellee responds that Appellant failed to meet her burden in this regard, and failed to make a proffer of the evidence. In reply, Appellant submits that a sufficient proffer was made, or alternatively, that this Court may remand the matter for the taking of additional evidence in this regard.
We agree with Appellee that an insufficient showing was made. Pursuant to La.C.C.P. art. 1636(A), "[w]hen the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence." Prior to trial, Appellant did raise the issue with the court, and Appellant indicated she had "just found out from her case worker that they did accept September rent" after the notice to vacate, and argued such acceptance should *13 vitiate the notice. The court did disagree with that position. Appellant responded, "[o]ur position is that [rent] can't be accepted after the Notice [to vacate], but we're happy to put on a full trial[.]" At no point thereafter did Appellant provide further information regarding acceptance of rent after the notice.
Appellant submits this Court should rely upon Landry v. Landry , 192 So.2d 237, 238 (La.App. 4 Cir. 1966), in which this Court suggested remand might have been appropriate under supposedly similar circumstances. In Landry , however, this Court specifically found, with citation to the testimony in the record, that the district court refused to permit counsel for defendant to cross-examine plaintiff on the issue of jurisdiction. Here, although the district court articulated disagreement with Appellant's position, it did not prevent Appellant from making a proffer. Instead, upon learning of the court's disagreement, counsel responded, "we're happy to put on a full trial[.]" This Court is therefore left with nothing in the record to review, not because the lower court refused to permit a proffer, but because a proffer was not made.
Assignment of Error Two
Appellant next argues that the lower court erred in finding that Appellee satisfied its burden of proof that it had "good cause" to terminate the lease. Appellant asserts that the Housing Assistance Payment contract between Unity and Appellee permitted termination of Appellant's tenancy only for serious or repeated violations of the lease, for violations of law, or for "[o]ther good cause."
There is no dispute that this case does not involve violations of any law. Further, we agree with Appellant's argument that the presence of the dog on the premises, in itself, does not constitute a violation of the lease. Pursuant to La.C.C. art. 2053, when a contract provision is doubtful, it "must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract[.]" Here, Appellee's acceptance of a "pet fee" from Appellant to allow her to keep her dog on the premises constituted "conduct of the parties" that altered the provision of the lease prohibiting Appellant's dog.
Appellee argues in response that Appellant, as a non-party to the HAP contract, has no right to assert its provisions against Appellee.[4] Instead, Appellee submits it did indeed meet its burden of proving that the presence of Appellant's dog constituted a "nuisance" in violation of the lease terms, with general references to "the numerous difficulties presented" by Appellant's dog.
We begin with Appellee's contention that it provided sufficient evidence to support Appellant's eviction by way of violation of the lease provisions. The lease does indeed prohibit "nuisance," which includes "disturbing neighbors." The lease further provides that:
[S]hould such violation continue for [a] period of five days after written notice has been given Lessee [Appellant] (such notice may be posted on Lessee's door) or should such violation again occur after written notice to cease and desist from such activity or disturbance, then, Lessee shall be in default and Lessor shall have the right to follow eviction proceedings in accordance with Louisiana Fair Housing Law.
*14 The basis of Appellee's argument that it constituted a nuisance is the dog soiling the yard and acting aggressively. However, Appellee provided no sworn testimony of any witness who personally observed soiling; Mr. Charles and Mr. Vernon never personally witnessed the alleged conduct. To the extent that either was aware of the dog's behavior, it was learned through third parties, none of whom appeared to testify in court, and such testimony was properly objected to by Appellant as hearsay.
Aside from generalized characterizations of the dog's behavior as "very aggressive," Appellee provided only one incident involving Mr. Temple that could be relied upon by the court in this regard. That situation involved the dog charging Mr. Temple when Mr. Temple was inside Appellant's gate. The dog backed off, however, when Mr. Temple grabbed a two-by-four. The court also referenced the insurance policy as a factor in reaching its conclusion, but again, no competent proof of its contents was ever introduced into evidence. Though the members of the church suggested the dog created a problem due to their newly purchased insurance policy, the policy was never entered into evidence or reviewed by the court. It was also never clarified if the insurance policy strictly prohibits dogs, or if the policy simply does not provide coverage for incidents involving dogs based on the premiums currently paid by Appellee.
Even were we to assume the described conduct was sufficient to constitute a nuisance, in order for this provision of the lease to become enforceable, the lease first required Appellee to provide Appellant with written notice of the wrongful conduct, such that Appellant had an opportunity to "cease and desist" the conduct. The lease stated that, upon written notice to cease and desist such nuisance, if the conduct continued for five more days, or should the conduct occur again thereafter, Appellee would have the right to evict. There is no indication that such written notice was ever provided to Appellant.
Furthermore, La.C.C.P. art. 4701 provides:
When a lessee's right of occupancy has ceased because of the termination of the lease by expiration of its term, action by the lessor, nonpayment of rent, or for any other reason, and the lessor wishes to obtain possession of the premises, the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee. The notice shall allow the lessee not less than five days from the date of its delivery to vacate the leased premises.
Reading the lease and the Code of Civil Procedure in para materia , the landlord must first provide written notice to cease the nuisance activity; thereafter, should the activity continue for five days, or occur again, the landlord may then deliver the five-day "Notice to Vacate."
The lower court questioned members of the church, and Mr. Temple did state he texted Appellant about the issues with the dog. The court looked at Mr. Temple's phone, but none of the messages were admitted into evidence.[5] Appellee provided no other evidence suggesting that Appellant was given proper written notice regarding her dog's behavior and the need to rectify it.
Based on the foregoing, the lower court manifestly erred in finding that Appellee met its burden of providing sufficient evidence *15 showing the legal ground upon which Appellant should be evicted.
CONCLUSION
For the foregoing reasons, we reverse the judgment of the lower court.
REVERSED
JENKINS, J., CONCURS IN THE RESULT

We note that the five days' notice to vacate, pursuant to LA.C.C.P. art. 4701, is not the same as the five days' written notice to cease and desist activity constituting a "nuisance" under the terms of the lease.

Ms. Petrone was later called as a witness in this regard, as was Colleen Simmons, also a LCSW.

The court also referenced testimony about the dog giving birth to puppies at one point. However, there is no indication when this occurred, and therefore the information did not factor into our ruling as it appeared to be a problem resolved by the parties previously.

The HAP contract does state that "[n]othing in this Contract shall be construed as creating any right of the Individual [Appellant] or other third party to enforce any provision of this Contract[.]"

There also appeared to be confusion regarding whether the text was referring to Appellant's dog or another tenant's dog.