James C. Rather, Jr., ALKER & RATHER, LLC, 4030 Lonesome Road, Suite B, Mandeville, LA 70448, COUNSEL FOR PLAINTIFF/APPELLEE
Madro Bandaries, MADRO BANDARIES, P.L.C. P., O. Box 56458, 938 Lafayette Street, Suite 204, New Orleans, LA 70156, COUNSEL FOR DEFENDANT/APPELLANT
(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Regina Bartholomew-Woods )
Judge Daniel L. Dysart *921 In this eviction proceeding, defendant-appellant, Clifford Abel, appeals a trial court judgment, in favor of plaintiff-appellee, 1205 St. Charles Condominium Association, Inc. (hereafter, the "SCCA"), which ordered that Mr. Abel vacate the premises he leased. For the reasons set forth more fully herein, we affirm the trial court's judgment.
PROCEDURAL AND FACTUAL BACKGROUND
On April 5, 2018, the SCCA filed a Rule for Possession of Premises ("Rule"), seeking to have Mr. Abel and June Abel evicted from 1205 St. Charles Avenue, unit 405, New Orleans, Louisiana. The basis of this Rule was Mr. Abel's alleged violation of several provisions of the lease. Attached to the Rule was a copy of the lease; the SCCA's Declarations, By-Laws and Rules and Regulations; a February 15, 2018 letter to Mr. Abel advising of the SCCA's intent to cancel the lease and commence eviction proceedings on March 19, 2018; and a March 12, 2018 letter to Mr. Abel requiring that he vacate the property no later than March 20, 2018.
In response, on April 12, 2018, Mr. Abel filed exceptions to the Rule. Those exceptions included the following arguments: (1) the Rule was "moot" because of insufficient notice; (2) the "owner of the leasehold" is not the SCCA and therefore, the proceeding lacked an indispensable party;[1] (3) Mr. Abel's mother, who resides in Florida, "is an executor of the lease," and was a necessary party to the proceedings upon whom notice and service of the Rule was required; (4) the SCCA did not establish by what authority it sought to evict him; (5) the events giving rise to the allegations of Mr. Abel's violations of the lease occurred prior to December 1, 2017 and were thus "moot;" (6) Mr. Abel "received no notices oral or written from" the manager or assistant manager; and (7) the allegations against Mr. Abel were false and he "never harassed or intimidated other resident[s]."
After a hearing on the Rule and by judgment dated April 17, 2018, the trial court granted the Rule and ordered that Mr. Abel and Ms. Abel vacate the premises by May 31, 2018. On April 17, Mr. Abel filed a hand-written document in which he requested an order of suspensive appeal. The trial court set a suspensive appeal bond in the sum of $250.00. The appeal was converted to a devolutive appeal after the SCCA moved to dismiss the appeal based on Mr. Abel's failure to answer the Rule, under oath, pleading affirmative defenses pursuant to La. C.C.P. art. 4735.[2]
*922 Standard of Review
In an eviction proceeding, it is the lessor's burden of proof "by a preponderance of the evidence, [of] a valid lease and that the violation of the lease provides sufficient grounds for an eviction." Guste Homes Resident Mgmt. Corp. v. Thomas , 12-0386, p. 8 (La. App. 4 Cir. 5/29/13), 116 So.3d 987, 991.
It is well-settled that appellate courts "review the lower court's eviction ruling under the manifest error/clearly wrong standard of review." Second Zion Baptist Church #1 v. Jones , 17-0926, p. 5 (La. App. 4 Cir. 4/18/18), 245 So.3d 9, 12. Thus, " '[a] judgment of eviction must be reversed when the lessor fails to prove the legal ground upon which the lessee should be evicted.' " Id. , p.4, 245 So.3d at 12, quoting Hous. Auth. of New Orleans v. King , 12-1372, p. 4 (La. App. 4 Cir. 6/12/13), 119 So.3d 839, 842. "If the trial court's factual conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trial court." Interstate Realty Mgmt. Co. v. Price , 11-1131, p. 6 (La. App. 4 Cir. 3/7/12), 86 So.3d 798, 802 (citation omitted). "The reviewing court must always keep in mind that if a trier of fact's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even if convinced that if it had been sitting as trier of fact, it would have weighed the evidence differently." Id. (citation omitted).
We note, too, that " '[w]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are reasonable.' " 200 Carondelet v. Bickham , 17-0328, p.4 (La. App. 4 Cir. 10/25/17), --- So.3d ----, ----, 2017 WL 4803954, quoting Rosell v. ESCO , 549 So.2d 840, 844 (La.1989). Thus, "[i]f there are two permissible views of the evidence, 'the factfinder's choice between them cannot be manifestly wrong.' " Id.
Testimony at hearing
At the hearing on the Rule, the trial court initially considered and rejected all of Mr. Abel's exceptions. The trial court then heard the testimony of six witnesses, including Mr. Abel.
The first witness to testify was Victor Zaidain, the president of the board of directors of the SCCA, who authenticated the SCCA's Acts of Declaration and its rules and regulations.[3] Mr. Zaidain then testified regarding a series of meetings that took place after he was elected as president of the board in January, 2018. At the second of these meetings in February 16, 2018, the board, by a quorum of three board members, elected to issue a thirty-day eviction notice to Mr. Abel. This decision, according to Mr. Zaidain, was based on a number of occurrences, and a number of complaints from other condo owners, from November, 2017 through January, 2018.[4] A letter was then sent to Mr. Abel *923 and his landlord advising of the board's intent to proceed with the cancelation of the lease and providing a thirty day notice.
On cross-examination, Mr. Zaidain reviewed some emails from his cell phone. One concerned attempts by the manager to meet with Mr. Abel's landlord to discuss Mr. Abel's behavior (to which the landlord reportedly responded that he had "nothing to do with it, and for the Board to proceed with whatever it wanted to do"). Mr. Zaidain also detailed fines levied against Mr. Abel's landlord for Mr. Abel's infractions, including his leaving cigars on the premises, one of which burned a hole in a chair, and another for verbal abuse.
Trisha Loporto, a resident of the condominiums, testified next. According to Ms. Loporto, she had reserved a community room for a family reunion on Thanksgiving Day. When she went to check on the room, she encountered Mr. Abel, who was watching television in the room. Mr. Abel used profanity and accused Ms. Loporto of having locked him out of the room. He then cursed at Ms. Loporto, calling her an "f---ing b-----."[5] Ms. Loporto left the room and reported the incident to a guard and later, to the property's management.
Paul McNair, a security officer employed by New Orleans Private Patrol, worked as a security guard at the condominiums for four years. On the Thanksgiving Day prior to the hearing, Mr. McNair reported to work and, while sitting at his desk, he encountered Mr. Abel, who called him an "f---ing n---er," accusing him of having locked the door to the party room.[6] Mr. McNair testified that Mr. Abel "continually called [him]" that racial epithet "the whole time while I was in the building." Mr. McNair further testified that Mr. Abel "told [him he was] going to make [his] life miserable." According to Mr. McNair, Mr. Abel "tormented [him] every day."
Ron Martinez, also a security guard for New Orleans Private Patrol stationed at the condominiums, testified that, while he was patrolling the property, he observed Mr. Abel going through a woman's laundry in the laundry room on more than one occasion. He indicated that, on another occasion, he saw Mr. Abel holding a pair of woman's panties (which he knew to be a woman's because it was pink), and on another occasion, he observed Mr. Abel with a woman's bra, which he saw him "rubbing."[7]
In his defense, Mr. Abel called Maude Varela, another condominium resident, who testified that she was one of the board members present at the meeting where the board voted to evict Mr. Abel. According to Ms. Varela, there were five board members, four of whom voted to evict him, while she abstained from voting. Ms. Varela also testified that there is a group of residents at the condominiums who do not like Mr. Abel and who have harassed him and wanted to have him evicted.
*924 After hearing the testimony of the witnesses, the trial court found as follows:
... I did find the people who testified were eletious [sic] and judgmental, but that doesn't, no less, excuse your behavior, Mr. Abel. I'm sorry, you are a nuisance. Accordingly, the Court will grant the rule for possession.
The trial court then ordered Mr. Abel to vacate the property by May 31, 2018.
DISCUSSION
In his first assignment of error, Mr. Abel contends that the trial court manifestly erred in finding that he was a "nuisance" and ordering his eviction. He cites a dictionary definition of nuisance and Robichaux v. Huppenbauer , 258 La. 139, 245 So.2d 385 (1971), in support of his contention that "individual citizens have to submit to some annoyance and inconvenience from the legal exercise of the rights of others within reasonable limit." Robichaux involved a suit by one neighbor to enjoin the other, who provided horses for horse-drawn carriages in the French Quarter, from operating a stable and keeping horses on his property. There, the Louisiana Supreme Court held that "injunctive relief to tenants whose health and safety were threatened by the manner in which the neighboring property was being used" was appropriate. Salter v. B. W. S. Corp ., 290 So.2d 821, 824 (La. 1974). Robichaux is thus, clearly inapplicable to this matter.
We need only look to the terms of the residential lease to determine what is considered to be "nuisance" behavior for which eviction may be ordered. The residential lease executed by Mr. Abel contains a provision whereby a lessee, such as Mr. Abel, would be in default of the lease for "other violations/nuisance[s]." That provision indicates that default can result from the lessee's:
failure to maintain a standard behavior consistent with the consideration necessary to provide reasonable safety, peace and quiet to others, such as but not limited to, being boisterous or disorderly, creating undue noise, disturbance or nuisance of any nature ... or failure [sic] to abide by any Rules and Regulations ....
(Emphasis added).
In such event, the "Lessor shall have the right ... to immediately cancel this lease and obtain possession of the premises."
Similarly, the documents regulating the SCCA provide similar prohibitions from certain behaviors.[8] Under the By-Laws, Article 13, Section 7.4, "[n]o nuisances shall be allowed on the Condominium Property nor shall any use or practice be allowed which is a source of annoyance to residents or which interferes with the peaceful possession and proper use of the Condominium Property by its residents ...." Similarly, the Rules and Regulations provide, in subpart 10, that "[n]o unit shall be used or occupied in such a manner as to obstruct or interfere with the enjoyment of other occupants of other units, or shall any nuisance or illegal activity be committed or permitted to occur in or about any unit or any part of the common elements of the condominium property."
The question of whether certain behavior rises to the level of "nuisance" behavior is clearly a fact question, See Robichaux , 245 So.2d at 389 ("[w]hether any particular stable is or is not a nuisance is essentially a question of fact"), and as such, great deference is afforded the trial court. See *925 Plaquemines Par. Civil Serv. Comm'n v. Plaquemines Par. Council , 17-0449, p. 8 (La. App. 4 Cir. 2/14/18), 241 So.3d 1040, 1046 ("great deference [is] afforded the trial court's findings of fact"). This is particularly the case when the findings of fact are based on the credibility of the witnesses "because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Barnett v. Landry , 14-0139, p. 3 (La. App. 4 Cir. 8/20/14), 147 So.3d 1231, 1232.
Under the circumstances of this case, and based upon the testimony of the witnesses, we do not find that the trial court abused its discretion in finding that Mr. Abel violated the lease by being a "nuisance." See Levine v. Allstate Ins. Co. , 17-0896, p. 5 (La. App. 4 Cir. 4/18/18), 243 So.3d 1286, 1289-90 ("[g]iven that there is a reasonable basis in the record to support the trial court's conclusions ..., we cannot say the trial court committed manifest error.").
In his second assignment of error, Mr. Abel contends that the trial court erred in failing to serve his mother, a co-signor of the lease, and in failing to grant his exception of failure to join an indispensable party (the lessor, Ricardo Johnson) to the action. We find no merit to either of these arguments.
While Mr. Abel assigns the trial court's denial of Mr. "Abel's exceptions as to no service as to his mother" as an error, there is no argument as to the lack of service on her. We thus do not address this issue. See Daniel v. Clarion Inn & Suites , 16-0760, p. 2 (La. App. 4 Cir. 2/22/17), 214 So.3d 38, 40 ("assignments of error numbers one and three were not briefed ....; thus, they are deemed abandoned under Uniform Rules - Courts of Appeal, Rule 2-12.4"). However, Mr. Abel does argue that Ms. Abel "was the actual lessee and payee as to the lease [and] was also an indispensable party."[9]
A review of the lease does, indeed, reflect that both Mr. Abel and Ms. Abel are lessees under the lease. Importantly, however, under the section of the lease entitled "Occupants," it is specifically noted "Ms. June Abel will not be residing on the property." We know of no case law, and Mr. Abel cites no case law, indicating that one who signs a lease, but expressly indicates that she will not reside on the premises is an indispensable party to an eviction proceeding.
Under La. C.C.P. art. 927, the objection of nonjoinder of party under Articles 641 and 642 may be raised through a peremptory exception. La. C.C.P. art. 641, referenced therein, provides:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
*926 If joinder of a party "is not feasible," La. C.C.P. art. 642 then provides that the court shall consider whether the action should proceed without that party, taking into consideration the following factors:
(1) To what extent a judgment rendered in the person's absence might be prejudicial to him or those already present.
(2) The extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or by other measures.
(3) Whether a judgment rendered in the person's absence will be adequate.
(4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
The articles on joinder formerly discussed "necessary" and "indispensable" parties, but as amended in 1995, these terms were removed and replaced with "the concept of 'joinder of parties needed for just adjudication.' " Gettys v. Wong, 13-1138, p. 7 n.2 (La. App. 4 Cir. 5/7/14), 145 So.3d 460, 464, writ denied , 14-1178 (La. 9/19/14), 149 So.3d 247. As the Gettys Court indicated, under " La. C.C.P. art 641(1), a party in whose absence complete relief cannot be accorded among those who are parties 'shall be joined as a party.' " Id. , p. 7, 145 So.3d at 465. The Louisiana Supreme Court explained:
La. Code of Civ. Proc. art. 641 establishes two sets of circumstance under which a third-party may be considered a party needed for just adjudication. A person may be considered indispensable only if one of the two circumstances listed therein exists. First, under La.Code of Civ. Proc. Art. 641(1), a person may be considered a party needed for just adjudication if, absent his presence, "complete relief cannot be accorded among those already parties." Second, under La.Code of Civ. Proc. art. 641(2), a person may be considered a party needed for just adjudication if that person claims an interest relating to the subject matter of the suit and if the other conditions specified in that subpart are present.
Indus. Companies, Inc. v. Durbin , 02-0665, pp. 14-15 (La. 1/28/03), 837 So.2d 1207, 1217. "Courts are to determine whether a party should be joined and whether the action should proceed if a party cannot be joined by a factual analysis of all the interests involved." Tensas Par. Police Jury v. Perritt , 50,123, p. 8 (La. App. 2 Cir. 9/30/15), 181 So.3d 143, 148.
In the instant matter, there is no question that the only person residing in the condominium was Mr. Abel, as the lease expressly states that Ms. Abel would "not be residing on the property." Thus, only Mr. Abel has an actual interest in the eviction proceeding. It follows that "complete relief can[ ] be accorded among those already parties." We note, too, that Ms. Abel has neither appeared or intervened in this litigation, nor "claim[ed] an interest relating to the subject matter of the suit." Accordingly, we find no abuse of discretion in the trial court's denial of Mr. Abel's exception of nonjoinder of parties. See Rayford v. Nat'l R.R. Passenger Corp. , 05-1273, p. 7 (La. App. 4 Cir. 4/13/07), 962 So.2d 5, 9, ("we ... review the findings of the trial court [as to joinder of parties] in accordance with the 'abuse of discretion' standard of review.").
We likewise find no merit to Mr. Abel's contention that his direct lessor, Ricardo Johnson, is a necessary party to this action. The documents regulating the SCCA specifically indicate that the SCAA has the right to terminate a lease. More *927 particularly, Article 8 of the Declarations, concerning leases, provides, in pertinent part, as follows:
Any lease or sublease of a Unit shall include a provision[s] ... (ii) that the lessee shall designate the Association as lessor's agent to enforce compliance with the terms of the lease and the Condominium Documents, and (iii) that any violation of the Condominium Documents shall be a default under the lease. The Association shall have the right to terminate a lease upon thirty (30) days' written notice should the lessee be in violation of the Condominium Documents.
Thus, the SCCA is designated as Mr. Johnson's agent for the purposes of enforcing the provisions of the lease. Moreover, the SCCA had the explicit right to terminate the lease upon thirty days written notice. Here, the SCCA provided written notice to Mr. Abel on February 15, 2018 that it intended to terminate the lease and commence eviction proceedings on March 19, 2018. Thereafter, on March 12, 2018, it sent a letter to Mr. Abel requiring that he vacate the property no later than March 20, 2018. The SCCA therefore complied with the thiry-day notice requirement for terminating the lease.
In his final assignment of error, relying on Sarpy v. de la Houssaye , 217 So.2d 783 (La. App. 4 Cir. 1969), Mr. Abel argues that the trial court erred in ruling on the motion to dismiss the suspensive appeal as it lost jurisdiction over the matter once the appeal bond was filed. The trial court judgment granted the motion to dismiss the appeal on the basis that Mr. Abel "failed to comply with La. C.C.P. art. 4735 by filing his answer under oath," and thereby converted the appeal to a devolutive appeal.
We note that Mr. Abel made the identical argument on this issue in his writ application, which this Court denied on June 15, 2018. See footnote 2. No new arguments have been raised.
"[W]hen an appellate court considers arguments made in supervisory writ applications or responses to such applications, the court's disposition on the issue considered becomes the 'law of the case,' foreclosing relitigation of that issue either in the trial court on remand or in the appellate court on a later appeal." Reed v. St. Charles Gen. Hosp. , 08-0430 (La. App. 4 Cir. 5/6/09), 11 So.3d 1138, 1145. We note that our jurisprudence also indicates that "any prior 'determination' in a request for a supervisory writ is not necessarily binding on a subsequent appeal." Armstrong Airport Concessions v. K-Squared Rest., LLC , 15-0375, p. 8 (La. App. 4 Cir. 10/28/15), 178 So.3d 1094, 1100 (citation omitted). The Armstrong Court also reiterated that "[a]pplying the 'law of the case' doctrine to supervisory writs decisions is discretionary." Id., p. 7, 178 So.3d at 1100 (citation omitted). However, "where a prior disposition is clearly erroneous and will create a grave injustice, it should be reconsidered." Louisiana Land & Expl. Co. v. Verdin , 95-2579, p. 4 (La. App. 1 Cir. 9/27/96), 681 So.2d 63, 65.
In the instant case, we see no palpable error or manifest injustice as a result of our prior ruling and we decline to reconsider that prior ruling. Mr. Abel admits that he no longer resides in the condominium and the effect of a reversal of the trial court's ruling converting the appeal to a devolutive appeal at this stage would have no effect.
Moreover, the trial court's ruling is not clearly incorrect. Pursuant to La. C.C.P. art. 4735, "[a]n appeal does not suspend execution of a judgment of eviction unless the defendant has answered the rule under oath, pleading an affirmative defense entitling *928 him to retain possession of the premises, and the appeal has been applied for and the appeal bond filed within twenty-four hours after the rendition of the judgment of eviction."
In the instant matter, the record does not show that Mr. Abel fulfilled the first requirement of Article 4735 - answering the rule for eviction, under oath, and pleading an affirmative defense which would have entitled him to retain possession of the premises. To the contrary, Mr. Abel only filed hand-written exceptions to the Rule for Possession of Premises, and while there is a certificate of service attesting to his having "faxed a copy" of the exceptions to counsel for the SCCA, there is no "answer to rule under oath" pleading affirmative defenses. See Sarpy v. de la Houssaye , 217 So.2d 783, 785 (La. App. 4 Cir. 1969) (answer was not filed under oath because, while it "conclude[d] with an appropriate prayer and [was] signed by his attorney" and was followed by "a 'Certificate of Service' signed by the attorney which was merely to the effect that a copy of the 'foregoing answer' had been mailed to plaintiff's attorney," there was "no supporting affidavit nor any other instrument of attestation, under oath or otherwise, either attached to the answer or filed separately.").
In Interstate Realty Mgmt. Co. v. Price , 11-1131, p. 9 (La. App. 4 Cir. 3/7/12), 86 So.3d 798, 803, this Court found that, where tenants evicted from a property "did not answer the Rule for Possession under oath and sign it personally" they "were not entitled to a suspensive appeal." See also , Boudreaux' Estate v. Verdin , 425 So.2d 873, 874 (La. App. 1 Cir. 1982) ("[a]n affirmative defense in an eviction proceeding must be pleaded under oath personally sworn to by defendant in order to permit the subsequent taking of a suspensive appeal by defendant."); McMillan v. Chauvin , 281 So.2d 181, 182 (La. App. 4 Cir. 1973) ("[o]ur jurisprudence has held that the provisions of Article 4735 are clear and unambiguous and provide a mandatory condition for the maintenance of a suspensive appeal from a judgment of eviction that the tenant must have filed an answer setting forth an affirmative defense verified personally by the tenant's affidavit. Neither the sworn testimony of the tenant on trial, nor the filing of an answer under oath of the attorney after trial but before judgment, fulfills the requirements.").
Thus, because Mr. Abel was not entitled to a suspensive appeal, the trial court properly converted the suspensive appeal to a devolutive appeal. See e.g. , Freemin v. Coglaiti , 411 So.2d 471, 472 (La. App. 1 Cir. 1981) ("[a]lthough an appeal for an eviction judgment cannot be maintained as suspensive, the appeal may be maintained as a devolutive appeal if the requirements of the general law for a devolutive appeal are met."); Weiland v. Mosby , 30,111 (La. App. 2 Cir. 1/21/98), 707 So.2d 1285, 1286 (where an appellant is not entitled to a suspensive appeal, and the trial court improperly allowed a suspensive appeal, the matter should be maintained as a devolutive appeal).
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

The handwritten exceptions are unclear. It appears that Mr. Abel's argument centers on his contention that the owner of the unit he leased was not made a party to the action.

Mr. Abel filed an application for a supervisory writ, seeking expedited consideration of the trial court's ruling which converted the suspensive appeal to a devolutive appeal. This Court denied the writ application on June 15, 2018. 1205 St. Charles Condominium Association Inc. v. Clifford Abel , 19-C-0551 (La. App. 4 Cir. 6/15/18)(unpub.).

Mr. Zaidain was president from 2012-2016, and again in 2018. He was not president in 2017.

One of the complaints was that, on one occasion, Mr. Abel followed a woman "up the stairs and ... kept pursuing her regarding some medication." Another complaint was that, on another occasion, a resident complained that he was "dressed in an improper way ... because his derrière was showing at some points." In his closing argument to the trial court, Mr. Abel explained that his pants had fallen down and that he "picked them up;" he was not "attempting to expose [his] rear end to any woman." Mr. Zaidain also testified about generally receiving complaints from residents that Mr. Abel made them fearful for their security.

Mr. Abel admitted to the trial court that he cursed Ms. Loporto in this very manner.

While Mr. Abel denied having made this statement, in his argument to the trial court, he admitted that he called him "a stupid M-F."

In his closing argument at the hearing, Mr. Abel indicated that he has serious health issues which cause him to be disoriented at times and he would forget which washer and dryer he used, thus explaining why he had other person's clothing in his hands.

Those documents include the Act of Declaration Creating and Establishing A Condominium Regime; Articles of Incorporation; By-Laws; and Rules and Regulations.

Additionally, in the exceptions initially filed in the record, Mr. Abel does note that "June Abel is a necessary party ...." While Mr. Abel does not specifically raise this objection through a peremptory exception, "the nature of an exception should be determined by its substance." Judson v. Davis , 04-1699, p. 8 (La. App. 1 Cir. 6/29/05), 916 So.2d 1106, 1114.