| | | |
|---|---|---|
| **TRAMPASS PRITCHETT** | * | **NO. 2024-CA-0032** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **COOPER MARINE &** | * | |
| **TIMBERLANDS** | | **FOURTH CIRCUIT** |
| **CORPORATION** | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-02504, DIVISION "A"
Honorable Ellen M Hazeur, Judge
\* \* \* \* \* \*
**Judge Karen K. Herman**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Paula A. Brown, Judge
Karen K. Herman)

**BELSOME, J., DISSENTS WITH REASONS**

Neil F. Nazareth
Scott Bickford
Lawrence J. Centola, III
Spencer R. Doody
Jason Z. Landry
Jeremy J. Landry
MARTZELL, BICKFORD & CENTOLA
338 Lafayette Street
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLANT

Matthew Moeller
David K. Smith
Kassie Lee Richbourg
THE MOELLER FIRM, LLC
650 Poydras Street, Suite 2516
New Orleans, LA 70130

      COUNSEL FOR DEFENDANT/APPELLEE

                                      **AFFIRMED**
                                  **JUNE 26, 2024**

Plaintiff-Appellant, Trampass Pritchett ("Plaintiff"), appeals the trial court's judgment dated, October 13, 2023, which granted the motion to dismiss for *forum non conveniens* filed by Defendant-Appellee, Cooper Marine & Timberlands Corporation ("CMT"). For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

This is a Jones Act suit. According to the petition, Plaintiff was a tugboat pilot employed by CMT and assigned to work aboard the tug/pushboat M/V YELLOW HAMMER. The record shows that Plaintiff is a resident of Alabama and CMT is an Alabama corporation. At the time of the incident, the vessel was secured to the dock at Michoud Slip in New Orleans, Louisiana. Plaintiff alleged that he was injured aboard the vessel when he attempted to get out of his top bunk, grabbed a rolling chair, and fell on the floor. Specifically, the petition provides:

> Plaintiff was getting off of his top bunk and took hold of the chair in his room. While the chair in his room is bolted down to the deck floor, this time it rolled, pulling Plaintiffs left arm out and causing him to fall onto his right shoulder on the deck floor. Plaintiff realized then that someone put an office-style chair with wheels in his room without his knowledge or permission, violating the rules aboard the vessel and causing his accident

As a result of the injuries sustained, Plaintiff filed suit against CMT on March 22, 2023.

On June 16, 2023, CMT filed a motion to dismiss for *forum non conveniens*, arguing that the public and private interest factors demonstrate that Alabama is a more appropriate forum to adjudicate the lawsuit and that Orleans Parish has no local interest in this case. In support of the motion, CMT offered the petition for damages; the affidavit of Heather Brooks, an employee of CMT; and the affidavit of John Stokes, the Senior Vice President of Marine Operations for CMT.

In her affidavit, Brooks attested that CMT "owns a fleet of 21 push boats and more than 400 barges" and that the "vessels work in the Tennessee-Tombigbee River system as well as the Gulf Intracoastal Waterway from Texas to Florida." She attested that she maintained the crew lists and stated that "crewmembers that are working aboard a CMT vessel are reflected in that vessel's crew list, which includes their home address." She attested that the crew list for the M/V YELLOW HAMMER, "includes Lorenzo Griggs, John Graham, Devin Williams, Michael Calloway, Ira Simoneaux, and Trampas Pritchett" and that "none" of the crew members "are residents of Louisiana."

In his affidavit, Stokes attested as to the number of boats and barges as well as locations the vessels work. He stated that CMT fleet includes the M/V YELLOW HAMMER and that the captains of the M/V YELLOW HAMMER maintain daily vessel logs. Stokes attested that as Senior Vice President of Marine Operations he has access to and maintains the daily logs, which were attached to the affidavit and reflected the activities of the vessel from March 29, 2022 to June 18, 2022. The daily logs provided that M/V YELLOW HAMMER made a stop at

2

the Michoud Slip approximately 14 days out of the 81-day period from March 29 to June 18, which CMT alleged is "only 17% of the time."

On August 10, 2023, Plaintiff filed his opposition to the motion to dismiss, arguing that La. C.C.P. art. 123(B) only permits dismissal of a case based on *forum non conveniens* if the grounds for the Plaintiff's claims occurred outside of Louisiana and even if the article was applicable the relevant factors support remaining in Louisiana. Plaintiff included a printout of websites, which he argued showed CMT has a "business and operations presence in Louisiana."[1] Plaintiff specifically noted that CMT's Louisiana vessel operations office is located in LaPlace, LA; the barge services office is in Hahnville, LA; and its parent company, the Cooper Group has nine locations in Louisiana, two of which are located in New Orleans.[2]

The motion came for hearing before the trial court on September 29, 2023. After hearing oral arguments, the trial court granted the motion to dismiss. The trial court provided the following reasons:

> The Motion to Dismiss For Forum Non Conveniens is granted. The Code of Civil Procedure Article 123(B) allows dismissal of a cause of action that is predicated upon acts or omissions originating outside of the territory or bounds of this state when it is shown that a more appropriate forum exists outside of this state.

> Plaintiff argues that Article 123(B) cannot apply because the acts that his cause of action are predicated upon occurred solely in Louisiana. The Court finds this argument to be without merit.

> Louisiana Courts have held that the location of the acts is but one factor to be considered. A defendant seeking dismissal based upon forum non conveniens must first establish that an ultimate forum

---

[1] *See also* https://www.cooper-marine.com/; https://thecoopergroup.com/louisiana.

[2] The Cooper Group also has thirteen offices in Alabama, one in California, one in Georgia, three in Mississippi, one in New York, one in Ohio, one in South Carolina, five in Texas, seven in Virginia, as well as one in Mexico. *See* https://thecoopergroup.com/louisiana.

is both available and adequate. It is clear that an alternative forum exists in Alabama state and federal court. Having established that an alternative forum exists, the Court must consider all of the relevant private interest factors and balance those factors, weighing in favor of dismissal with the deference given to plaintiff's choice of forum. The relevant private interest factors include (1) the convenience of the parties and witnesses; (2) the access to the sources of proof, as well as viewing of the premises, if appropriate; (3) the cost of obtaining attendance of witnesses; and (4) the advantages and obstacles to a fair trial. The Court finds that these factors weigh in favor of dismissal. Both parties are Alabama citizens. Plaintiff sought medical treatment in Alabama; therefore, the medical evidence and witnesses are located in Alabama.

Plaintiff has not listed any specific witnesses. However, defendant has established that there were six crew members onboard the vessel, and five of those members are Alabama citizens. The sixth crew member is a Mississippi citizen. The vessel itself travels; though it appears that it is more often in Alabama than Louisiana. While plaintiff argues that he will not get a fair trial in his home state, there is evidence that Alabama – there's no evidence that an Alabama court will be biased against him. While plaintiff's initial choice of forum is entitled to deference, courts give less deference to a plaintiff's choice to sue outside of his home forum. Considering this, the Court finds that these factors weigh in favor of dismissal.

After considering the private interest factors, the Court must consider the public interest factors to determine whether retention of jurisdiction would be unnecessarily burdensome to either the defendant or the Court. The public interest factors include the following: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems and conflicts of laws or in the application of foreign law; and (5) the unfairness of burdening Citizens in an unrelated forum with jury duty.

The Court finds that these factors also weigh in favor of dismissal. This is a case involving Alabama Citizens onboard an Alabama vessel with no strong ties to Orleans Parish. This is also a Jones Act case, so federal substantive law applies. There is low public interest in having the trial occur in Orleans Parish as Louisiana substantive law does not apply. Considering this, the Court finds these factors also weigh in favor of dismissal.

For the reasons orally assigned, the Motion to Dismiss For Forum Non Conveniens is granted.

4

The trial court executed the judgment granting the motion on October 13, 2023. Plaintiff's timely appeal followed.

**APPLICABLE LAW AND DISCUSSION**

Appellate courts review the trial court's ruling on a motion to dismiss based on *forum non conveniens* under the abuse of discretion standard. *Hertz Inv. Grp., LLC v. Am. Guarantee & Liab. Ins. Co.*, 2022-0096, p. 4 (La. App. 4 Cir. 5/4/22), 340 So.3d 136, 140, *writ denied*, 2022-00897 (La. 9/27/22), 347 So.3d 151 (citing *Star Transp. Inc v. Pilot Corp.*, 2014-1228, p. 3 (La. App. 4 Cir 6/24/15), 171 So.3d 1195, 1197-98). "The abuse of discretion standard is appropriate because La. C.C.P. art. 123 confers a great amount of discretion on the trial court in determining if the conditions for *forum non conveniens* are fulfilled; and, subsequently, an appellate court reviews whether or not the trial court abused this discretion." *Minot obo Minot v. Waffle House, Inc.*, 2020-0444, p. 9 (La. App. 4 Cir. 10/2/20), 365 So.3d 709, 716 (citing *Martinez v. Marlow Trading, S.A.,* 2004-0538, p. 4 (La. App. 4 Cir. 2/2/05), 894 So.2d 1222, 1225).

*Forum non conveniens* is governed by La. C.C.P. art. 123.  Section (B) provides for dismissal without prejudice where it is shown that a more appropriate forum exists outside of Louisiana and states:

> Upon the contradictory motion of any defendant in a civil case filed in a district court of this state in which a claim or cause of action is predicated upon acts or omissions originating outside the territorial boundaries of this state, when it is shown that there exists a more appropriate forum outside of this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interest of justice, the court may dismiss the suit without prejudice; however, no suit in which the plaintiff is domiciled in this state, and which is brought in a court which is otherwise a court of competent jurisdiction and proper venue, shall be dismissed pursuant to this Article.

5

This Court in *Foot Locker, Inc. v. Zurich Am. Ins. Co.*, 2021-0594, pp. 6-8 (La. App. 4 Cir. 5/11/22), 340 So.3d 166, 170-171, recently outlined relevant factors and burden of proof applicable to the doctrine on *forum non conveniens*:

> The doctrine of *forum non conveniens* presupposes at least two forums where the defendant is amenable to process and simply furnishes criteria for choice between them. Thus, a defendant seeking dismissal, at the trial level, based upon *forum non conveniens* must first establish that an alternate forum [exists] that is both available and adequate. If the trial court concludes that an alternative forum exists, it then considers all of the relevant private interest factors, balancing those factors weighing in favor of dismissal with the deference given to the plaintiff's choice of forum.[3] The relevant private interest factors include:
>
> • The convenience of the parties and witnesses;
> • The access to the sources of proof, as well as viewing of the premises if appropriate;
> • The cost of obtaining attendance of witnesses; and
> • The advantages and obstacles to a fair trial.
>
> After considering the private interest factors, a court then considers the public interest factors to determine whether retention of jurisdiction would be unnecessarily burdensome to either the defendant or the court. The public interest factors include the following:
>
> • The administrative difficulties flowing from court congestions;
> • The local interest in having localized controversies decided at home;
> • The interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;
> • The avoidance of unnecessary problems in conflicts of laws, or in the application of foreign law; and
> • The unfairness of burdening citizens in an unrelated forum with jury duty.

---

[3] The plaintiff's initial choice of forum is entitled to deference," but a "plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting on him expense or trouble not necessary to his own right to pursue his remedy." *Signet Jewelers Ltd. v. Steadfast Ins. Co.*, 2021-0288, p. 4 (La. App. 4 Cir. 12/22/21), 366 So.3d 169, 171 (quoting *Holland v. Lincoln Gen. Hosp.*, 2010-0038, pp. 6-7 (La. 10/19/10), 48 So.3d 1050, 1055 (citations omitted). Moreover, "[c]ourts give less deference to a plaintiff's choice to sue outside his home forum." *Id*. (quoting *Boudreaux v. Able Supply Co.*, 2008-1350, p. 6 (La. App. 3 Cir. 10/7/09), 19 So.3d 1263, 1269; *see also Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184, 1191, 167 L.Ed.2d 15 (2007)).

*Id.* (quoting *Minot*, 2020-0444, pp. 9-10, 365 So.3d at 617).

In *Footlocker*, the plaintiff-footwear retailer, brought suit against its property insurer to recover for loss of business income during COVID-19 pandemic in Louisiana. The defendant-insurer moved to dismiss for *forum non conveniens*, which the trial court granted. On appeal, after analyzing the public and private interest factors, this Court affirmed, finding no abuse in the trial court's "wide discretion." *Foot Locker, Inc.*, 2021-0594, p. 14, 340 So.3d at 174. With regard to the private interest factors, the Court noted:

> The private interest factors support a finding that New York is a convenient and appropriate forum. As far as convenience for the parties, Foot Locker's corporate headquarters and principal place of business is in New York. Zurich is organized under the laws of the State of New York with its principal place of business located in Illinois. No party is domiciled in Orleans Parish. The petition does not identify any specific witnesses who will be called to testify, though Foot Locker's corporate representatives based in New York and Zurich's corporate representatives based in Illinois would likely testify. No Orleans Parish witnesses were identified by either party. Access to sources of proof is, at most, neutral considering the pervasive ability to conduct electronic discovery, though, again, the parties' principal corporate presence is in New York and Illinois. Nothing in the petition specifies where the Zurich policy was negotiated or executed, though the policy (as an exhibit to the petition) shows Foot Locker's New York address. Of its approximately 3,000 stores in 28 countries, Foot Locker has only 6 retail stores in Orleans Parish and 49 total stores in Louisiana. Foot Locker's alleged losses took place throughout the world. From a travel standpoint, all witnesses would seemingly need to travel to Orleans Parish if trial takes place there. The record lacks any demonstration on any party's ability to receive a fair trial.

*Foot Locker, Inc.,* 2021-0594, p. 11, 340 So.3d at 173. As to the public interest factors, the Fourth Circuit also found that New York was a convenient and appropriate forum:

> While the disputed closures among Foot Locker's stores took place internationally, Foot Locker's principal place of business is in New York, which favors a local interest in having localized controversies

decided at home, especially as only 6 of Foot Locker's 3,000 stores are located in Orleans Parish. Foot Locker contends that Louisiana courts have a significant interest in litigating the scope of the Louisiana endorsement. Even so, numerous endorsements specific to other states are a part of the policies at issue. The parties dispute which state's law will apply to this litigation, though little showing is made whether there is any conflict between the applicable laws of New York and Louisiana. Considering court administrative issues of congestion and jury duty in disputes in an unrelated forum, Foot Locker demanded a jury trial in Orleans Parish, where, again, only a small percentage of its stores are located; neither Foot Locker nor Zurich is domiciled in Orleans Parish or Louisiana.

*Foot Locker, Inc.*, 2021-0594, p. 12 (La. App. 4 Cir. 5/11/22) 340 So.3d at 173.

While the fact pattern differs from the instant case, similar to the Court in *Foot Locker, Inc*, we find that the trial court did not abuse its discretion in granting the motion to dismiss based on *forum non conveniens*. The allegations of the petition show that an adequate and available forum exists in Alabama. Moreover, as articulated by the trial court in its reasons, the private and public interest factors weigh in favor of Alabama as the more convenient forum. CMT and Plaintiff are Alabama citizens. Additionally, since Plaintiff is an Alabama resident, little deference is given to his choice to sue outside his home forum. *See Signet Jewelers Ltd.*, 2021-0288, p. 4, 366 So.3d at, 171.[4] Further, none of the crewmembers that would potentially be witnesses are in Louisiana and all but one are residents of Alabama. The record also shows that Plaintiff only sought medical treatment in Alabama;[5] therefore, the treating physicians and medical records are located in Alabama. All witnesses would seemingly need to travel to New Orleans if trial were to take place here. Thus, the costs of obtaining witnesses and evidence will be greater if the case proceeds in Louisiana. Moreover, aside from the location of the

---

[4] *See* n. 3.

[5] Plaintiff concedes that all of his treatment occurred in Alabama.

incident, there are no other significant ties to Orleans Parish.[6] Additionally, while the daily logs show that M/V YELLOW HAMMER did dock at Michaud Slip, it did so only approximately fourteen days out of an 81-day period. Further, the suit is a Jones Act case between Alabama citizens that would involve the application of federal law, and thus there does not appear to be a matter of public interest for the suit to remain in Louisiana. As such, the trial court did not abuse its great discretion in determining that Alabama is the more convenient and appropriate venue for this lawsuit.

Plaintiff, however, argues that the trial court erred in granting the motion to dismiss because La. C.C.P. art. 123(B) "requires that the claim or cause of the action for a defendant's *forum non conveniens* motion be predicated on acts or omissions originating outside of Louisiana, which did not happen here." Plaintiff thus claims that because his injury occurred while the vessel was docked in Louisiana, La. C.C.P. 123(B) cannot apply.

However, at least one Louisiana court, *Boudreaux v. Able Supply Co.*, 2008-1350, p. 7 (La. App. 3 Cir. 10/7/09), 19 So.3d 1263, 1270, rejected a similar argument regarding the application of La. C.C.P. art. 123(B). Moreover, Louisiana jurisprudence, including *Boudreaux*, considers the location of the act as just one of the factors to evaluate in determining the appropriate forum.

---

[6] The websites attached to Plaintiff's opposition indicates that the "Louisiana Vessel Operations Office" of CMT is located in LaPlace and that the "Barge Services" office of "Cooper Marine" is in Hahnville. However, no CMT office is located in New Orleans. Additionally, three of CMT's offices (Corporate and Commercial Office, Stevedoring & Terminal Operations, and Alabama Vessel Operations Office) are located in Alabama. Further, while the Cooper Group, a parent company of CMT, does have offices in Louisiana and two of which are located in New Orleans; it also has thirteen locations in Alabama. Furthermore, the Cooper Group is not a party to this lawsuit. *See* n. 1.

In *Boudreaux*, the plaintiffs, the widow and children of decedent, who contracted and subsequently died from malignant mesothelioma, brought a wrongful death and survival suit against the decedent's employer, supplier, and others. The plaintiffs and the decedent were all Texas residents. The decedent was allegedly exposed to asbestos while working as an insulator at various worksites in Texas and Louisiana. The defendants filed motions for dismissal for *forum non conveniens*. The trial court found that all of the private and public interest factors supported a finding that Texas was a more convenient forum.[7] The Third Circuit agreed and affirmed. In reaching this conclusion, the Third Circuit also rejected the plaintiff's assertion that all acts providing the basis for the lawsuit had to occur outside Louisiana and indicated that plaintiff's allegations of acts in Louisiana was just one factor. The Court stated:

> Plaintiffs also argue that in order for La. [C.C.P.] 123(B) to apply, *all* acts providing the basis for the suit had to occur outside of Louisiana. Specifically, they argue the mere *allegation* of a single

_____

[7] The Third Circuit stated:

> The trial court found the private interest factors weighed heavily in favor of Texas as the more convenient forum. The trial court specifically noted in its reasons for judgment that decedent and the plaintiffs were lifelong residents of Texas. The only contact with Vermilion Parish was for an eight-month period spent working for his brother-in-law's company, Gulf Coast Engine Company, on a fishing boat. The trial court also considered that all medical treatment of decedent occurred in Texas, and therefore all of the medical evidence and witnesses were situated in Texas rather than Louisiana. The only witness plaintiffs identified as "will call" for trial, living within 25 miles of the Vermilion Parish courthouse, was decedent's brother-in-law. The record also establishes, of the twenty-five named defendants, only two were located in Louisiana, and none in Vermilion Parish. Twenty-two of the named defendants were located in Texas, and one in the state of Washington. After a thorough review of the facts in this case, we find the trial court's conclusion that the private interest factors supported Texas as the more convenient forum was not an abuse of discretion.

*Boudreaux*, 2008-1350, p. 4, 9 So.3d at 1268. The Third Circuit also found no abuse of discretion in the trial court's conclusion that the public interest factors "demonstrate that filing this proceeding in Texas benefits that state in allowing a local controversy to be decided by its judicial system, while relieving an unjustified expense and burden on Louisiana's citizens and judicial system."

incident of exposure in Louisiana will support litigation in Louisiana. We find no merit in this argument. Such a restrictive reading of that article is directly contrary to the principles of *forum non conveniens,* and, as defendants argue, could make Louisiana a haven for forum shoppers who perceive some sort of tactical advantage to filing suit here. **The allegations of limited acts in Louisiana is merely one factor to be considered along with the other factors, none of which support suit in Louisiana under the facts presented in this case**.

*Boudreaux*, 2008-1350, p. 7, 19 So.3d at 1270 (alternation in original; emphasis added).

In *Brumley v. Akzona, Inc.,* 2009-0861 (La. App. 4 Cir. 1/13/10), 45 So.3d 1115, this Court, after affirming the trial court's decision to grant motions to dismiss on the basis of *forum non conveniens*,[8] referenced *Boudreaux* and its interpretation of La. C.C.P. art. 123(B), stating:

> Next, the *Boudreaux* plaintiffs suggested that Article 123(B) allows a dismissal only if all the acts giving rise to the suit occur outside Louisiana. Again, the court of appeal found no such requirement, and recognized that the adoption of plaintiffs' argument would make Louisiana a haven for forum shoppers**.**

*Id.*, p. 6, 45 So.3d at 1118.

Thus, Louisiana courts have not applied a restrictive reading of La.

C.C.P. art. 123(B) such that the location of the act or omission is

---

[8] This Court, stated:

> The trial court found that the private interest factors weighed heavily in favor of Texas as the more convenient forum. He noted that decedent and plaintiff are Texas residents. Decedent received all of his medical treatment in Texas, and therefore all of the medical evidence and witnesses are situated in Texas rather than Louisiana. Although plaintiff named approximately fifty-three defendants allegedly responsible for Mr. Brumley's exposure to asbestos, he claimed only eight Louisiana job sites and a single Orleans Parish location. The vast majority of decedent's employers and work sites are in Texas. The court further noted that seven of the eight fact witnesses are in Texas. The expert witnesses who will testify on plaintiff's behalf are located all over the country, and therefore are not centrally located and restricted to Louisiana, Texas, or any other state. After reviewing the facts and evidence in this case, we find that the trial court's conclusion that the private interest factors supported Texas as the more convenient forum was not an abuse of discretion.

*Brumley*, 2009-0861, p. 4, 45 So.3d at 1117.

determinative of the issue of *forum non conveniens*. In fact, Louisiana jurisprudence indicates that the location of the incident is merely one factor to be considered in assessing a motion to dismiss for *forum non conveniens.* *See Hertz Inv. Grp., LLC,* 2022-0096, pp. 5-6, 340 So.3d at 140-41 (analyzing the location the insurance policy was negotiated and where the revenue losses were sustained in addition to private and public interest factors in determining a motion to dismiss based upon *forum non conveniens* relative to an insurance coverage dispute); *Foot Locker, Inc.,* 2021-0594, p. 6-8, 340 So.3d at 170-71; *Signet Jewelers Ltd.*, 2021-0288, p. 6, 366 So.3d at 172 (considering where the insurance policy was negotiated and the public and private interest factors in a business interruption suit); *Minot obo Minot*, 2020-0444, p. 15, 365 So.3d at 719 (taking into the account the location of the incident as well as private and public interest factors in a premises liability suit arising out of a fatal shooting); *Martinez*, 2004-0538, pp. 5-9, 894 So.2d at 1225-28 (evaluating the location of the injury and public and private interest factors in a Jones act suit); *Boudreaux*, 2008-1350, p. 7, 19 So.3d at 1270; *Woods v. Ace Am. Ins. Co., unpub.,* 2023-450, pp. 6-7, 2023 WL 714088, at *4 (La. App. 5 Cir. 10/31/23), *writ denied*, 2023-01575 (La. 2/6/24), 378 So.3d 748, *and writ denied*, 2023-01635 (La. 2/6/24), 378 So.3d 751 (assessing the location of the collision along with public and private interest factors in an auto accident case). Plaintiff's argument is thus unpersuasive.

Additionally, the trial court has vast discretion in determining if the conditions for *forum non conveniens* are fulfilled. While the incident giving rise to the lawsuit occurred in Orleans Parish; this Jones act suit involves an

12

Alabama resident on an Alabama vessel; all the crew members except one is from Alabama; Plaintiff's medical treatment occurred in Alabama; and Louisiana substantive law will not apply. Thus, the private and public interest factors support the trial court's finding that Alabama is the more appropriate forum. Accordingly, the trial court did not abuse its discretion in granting the motion to dismiss based on *forum non conveniens*.

**CONCLUSION**

Based on the foregoing, we find that the trial court's conclusion that private and public interest factors supported Alabama as the more convenient forum was not an abuse of discretion. The trial court's judgment dismissing the suit based on *forum non conveniens* is affirmed.